| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 18-108** |
| **THADDEUS BEAULIEU** | **SECTION: "G"** |

## ORDER

Before the Court is Defendant Thaddeus Beaulieu's ("Beaulieu") "Motion to Recuse Pursuant to 28 U.S.C. § 455(a)."[1] In this case, the United States alleges that Beaulieu's refusal to testify in *United States v. Dwayne Winans, Jr., et al.*, Criminal Docket No. 16-175, after being called before the Court and granted immunity, constituted criminal contempt, and that he could face a sentence of more than six months imprisonment.[2] In Beaulieu's motion, he requests that the Court recuse itself from this case because Beaulieu alleges that some of the Court's statements in a hearing to determine if Beaulieu was entitled to a jury show that the Court prejudged this case.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the motion.

## I. Background

### A. *Factual Background*

On April 23, 2018, the Court issued a writ of habeas corpus ad testificandum to the Sheriff

---

[1] Rec. Doc. 25.

[2] Rec. Doc. 1 at 1.

[3] Rec. Doc. 25-1 at 3.

of Orleans Parish, directing the Sheriff to surrender Beaulieu, who was in the custody of the Sheriff, to federal authorities to testify in the underlying criminal trial.[4] The underlying criminal trial of Dwayne Winans, Jr. and Bryson Tuesno involved felony charges for multiple armed bank robberies, car jackings, and obstruction of justice.[5]

On April 25, 2018, Beaulieu was called to testify as a material witness for the prosecution.[6] His testimony was not voluntary.[7] When called as a witness, Beaulieu was brought before the Court, took the stand, and immediately invoked his Fifth Amendment right against self-incrimination and requested assistance of counsel.[8] The Court immediately appointed the Federal Public Defender's Office as counsel for Beaulieu.[9] The Federal Public Defender then appointed Cynthia Cimino ("Cimino") to represent Beaulieu.[10]

After providing Beaulieu an opportunity to speak privately with his attorney,[11] the Court held a conference in chambers, with all parties present.[12] During the conference, Beaulieu's attorney stated that Beaulieu refused to testify because he was fearful of potential prosecution.[13] In response, the United States stated that it had guaranteed Beaulieu informal immunity through a

---

[4] Case No. 16-CR-175, Rec. Doc. 198.

[5] Case No. 16-CR-175, Rec. Doc. 53.

[6] Case No. 16-CR-175, Rec. Doc. 201.

[7] *Id.*

[8] Case No. 16-CR-175, Trial Transcript, Testimony of Thaddeus Beaulieu at p. 1 (Apr. 25, 2018).

[9] *Id.* at 6; Case No. 16-CR-175, Rec. Doc. 211.

[10] Case No. 16-CR-175, Rec. Doc. 211.

[11] Case No. 16-CR-175, Trial Transcript, Testimony of Thaddeus Beaulieu at p. 7–8 (Apr. 25, 2018).

[12] Case No. 16-CR-175, Trial Transcript, In Chambers Conference (Apr. 25, 2018).

[13] *Id.* at 3–4.

letter from the United States Attorney's Office.[14] However, Beaulieu indicated that he would not testify voluntarily without a court order requiring him to do so.[15] Yet at the same time, when asked by the Court if it was his "intention not to testify" and asked if "he just does not want to testify," Beaulieu responded personally by nodding his head in agreement.[16] Further, in response, his attorney stated:

> I will say that he did not control coming here today. It certainly is not his desire to get up on—burning desire to get up on the witness stand, because, as the government has rightfully identified, one of the defendants is his cousin and one is a—they grew up together since they were very small boys. So to the extent that he doesn't really—he does not want to take the witness stand against those people, that is true, Judge.[17]

Beaulieu further requested that the Court issue an order granting formal immunity under 18 U.S.C. § 6002.[18] The United States stated that it could not seek a court order granting formal immunity without the consent of the United States Department Justice.[19] The Court agreed to recess the

---

[14] *Id.* at 4; Rec. Doc. 29-1 at 1.

[15] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 4 (Apr. 25, 2018).

[16] *Id.* at 8.

[17] *Id.* 8–9.

[18] *Id.* at 4*; see United States v. Ramos*, 537 F.3d 439, 453 n. 8 (5th Cir. 2008) ("Formal grants of immunity under the immunity statutes are different in kind than informal immunity agreements. The former, as noted above, are creatures of statute and their issuance, by a court order that conforms to the statute, supersedes the Fifth Amendment privilege. In contrast, an informal immunity agreement is just that: an agreement between witness and government in which both parties receive mutual benefits. A witness who testifies under an informal immunity agreement is not threatened with contempt for his failure to testify, but instead with losing the benefit of the bargain he or she struck with the government. Witnesses with informal immunity agreements therefore do not abdicate their Fifth Amendment privilege when entering into the agreement; it is not until they testify that they give up the privilege. Indeed, informally immunized witnesses cannot later preclude the use of their testimony in a subsequent trial, save in accordance with their agreement with the government.") (internal citations omitted).

[19] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 5 (Apr. 25, 2018). 18 U.S.C. § 6002 provides:
> Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
> (1) a court or grand jury of the United States,

proceedings and allow the United States to seek approval from the Department of Justice, and then allow the United States to call Beaulieu as a witness again the following day.[20] The Court informed Beaulieu that after he was given formal immunity through a court order, he would no longer be able to assert his Fifth Amendment right against self-incrimination, and that he would be in violation of a court order if he refused to testify.[21] The Court further informed Beaulieu that despite the protections of formal immunity, he would still be sworn to tell the truth while testifying in court.[22] Accordingly, the Court informed Beaulieu that he could face consequences for criminal contempt, perjury, or making a false statement if he violated a court order compelling him to testify.[23]

On April 26, 2017, trial reconvened, and the United States informed the Court that it had received authorization by letter from the Department of Justice to seek court ordered formal immunity for Beaulieu.[24] The United States then called Beaulieu back to the stand to testify.[25]

---

(2) an agency of the United States, or
(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,
and the person presiding over the proceeding communicates to the witness an order issued under this title, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

[20] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 5 (Apr. 25, 2018).

[21] *Id.* at 17.

[22] *Id.* at 14–15.

[23] *Id.*

[24] Case No. 16-CR-175, Trial Transcript at p. 2 (Apr. 26, 2018).

[25] *Id.* at 3–4.

4

Again, Beaulieu refused to testify.[26] The Court advised Beaulieu that he could be held in contempt of Court for his refusal to testify.[27] Beaulieu stated that he had discussed the ramifications of his decision not to testify with his attorney and understood the consequences.[28] His attorney confirmed that this discussion occurred.[29] The Court ordered Beaulieu to testify pursuant to 18 U.S.C. § 6002.[30] Nevertheless, Beaulieu violated the order and refused to testify.[31] Therefore, the Court set a hearing for May 15, 2018, for Beaulieu to appear and show cause why he should not be held in criminal contempt for his failure to testify.[32]

Because Beaulieu refused to testify, the United States asserted that Beaulieu was an unavailable witness pursuant to Federal Rule of Evidence 804.[33] The United States sought to admit a Federal Bureau of Investigation Form 302 ("Form 302"), memorializing a January 3, 2018 interview between an agent and Beaulieu.[34] The United States argued that the Form 302 could be admitted without Beaulieu's testimony pursuant to Federal Rule of Evidence 804(b)(6) because Dwayne Winans, Jr. ("Winans"), a defendant in the underlying criminal case, had wrongfully caused Beaulieu's unavailability.[35] Specifically, the United States argued that several days earlier,

---

[26] *Id.* at 4.

[27] *Id.* at 15.

[28] *Id.* at 16.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* at 16–17; Rec. Doc. 216.

[33] Case No. 16-CR-175, Trial Transcript at p. 5–15 (Apr. 26, 2018).

[34] *Id.*

[35] *Id.* Federal Rule of Evidence 804(b)(6) provides an exception to the rule against hearsay where "[a] statement [is]

Winans threatened Beaulieu in the presence of a Deputy United States Marshal, Maurice Lightfoot ("Lightfoot").[36] The United States called Lightfoot to the stand to testify regarding the interaction between Winans and Beaulieu.[37] Lightfoot testified that on Monday, April 22, 2018, Winans and Beaulieu were both detained in the cell block of the courthouse.[38] According to Lightfoot, when Winans saw Beaulieu, Winans said: "[Beaulieu] why you out here ratting and lying on people?"[39] Lightfoot further testified that Beaulieu responded that "[He] just mad because [I] beat two murder charges."[40] Lightfoot testified that after this interaction, he separated the prisoners.[41] Based on this testimony, the Court concluded that the United States had not shown by a preponderance of the evidence that Winans wrongfully caused—or acquiesced in wrongfully causing—Beaulieu's unavailability as a witness such that the Form 302 would be admissible under Federal Rule of Evidence 804(b)(6) and did not allow it into evidence.[42]

## B.    *Procedural Background*

On May 10, 2018, the Court issued an Order requiring Beaulieu to appear before this Court on May 15, 2018, to show cause why he should not be held in criminal contempt for his failure to

---

offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6).

[36] Case No. 16-CR-175, Trial Transcript at pp. 6, 19 (Apr. 26, 2018).

[37] *Id.* at 18.

[38] *Id.* at 19.

[39] *Id.* at 20.

[40] *Id.*

[41] *Id.* at 20.

[42] *Id.* at 23–24.

testify.[43] The Court appointed Duane Evans, Acting United States Attorney, to prosecute the matter.[44]

At the May 15, 2018 hearing, the Court informed the parties that a person held in contempt is entitled to a jury trial if the offense is treated as a felony, rather than a petty offense, and the defendant faces a potential sentence of more than six months imprisonment.[45] The Court inquired whether the United States intended to seek a term of imprisonment of more than six months if Beaulieu is convicted of contempt.[46] The United States stated that it intends to seek a sentence of more than six months imprisonment if Beaulieu is convicted of contempt.[47] In support of this position, the United States cited several cases, including a Fifth Circuit case, where contemnors were sentenced to a term of imprisonment of five years for refusing to testify and analogized the facts of those cases to the one presently before the Court.[48] In response, counsel for Beaulieu did not dispute the contempt charge, but responded that "in the defendant's eyes, this was—does not rise to the level of a serious offense with respect to the conduct by my client," and thus he should not be subject to a sentence of more than six months if convicted.[49] The Court stated that refusal to testify under oath is not a "light matter" and thus, because the United States had provided

---

[43] Case No. 16-CR-175, Rec. Doc. 216.

[44] *Id.*

[45] Rec. Doc. 4 at 3 (citing *Cheff v. Schnackenberg*, 384 U.S. 373 (1966)).

[46] *Id.*

[47] *Id.*

[48] *Id.* at 4 (citing *United States v. Patrick*, 542 F.2d 381 (7th Cir. 1976); *United States v. Berardelli*, 565 F.2d 24 (2nd Cir. 1977); *United States v. Brummitt*, 665 F.2d 521 (5th Cir. 1981)).

[49] *Id.* at 4–5.

grounds demonstrating that Beaulieu could be facing a sentence of more than six months if convicted, Beaulieu was entitled to a jury trial.[50]

On May 21, 2018, the Court issued a written Order citing facts and authority finding it appropriate to treat this matter as a felony, rather than a petty offense, and directed the Clerk of Court to assign a criminal action number for this matter.[51] The Court further ordered that a status conference be held on June 14, 2018 at 4:00 p.m. for the purpose of scheduling a trial date.[52] During the status conference, counsel for Beaulieu argued once again that this matter not be set for trial by jury.[53] In response, the Court granted leave for the parties to submit further briefing on whether Beaulieu's refusal to testify should be treated as a petty offense or felony offense.[54] On June 28, 2018 Beaulieu filed a memorandum regarding the issue of the seriousness of the contempt.[55] On July 12, 2018 the United States filed an opposition.[56] On July 23, 2018 the Court issued an order again finding that the alleged contempt could be found to be a felony offense and set a jury trial.[57]

On August 10, 2018, the Court granted defense counsel Cimino's motion for leave to

---

[50] *Id.* at 7–8.

[51] Rec. Doc. 1.

[52] *Id.*

[53] Rec. Doc. 2.

[54] Rec. Doc. 3.

[55] Rec. Doc. 5.

[56] Rec. Doc. 6.

[57] Rec. Doc. 7.

withdraw as counsel of record for Beaulieu and appointed new defense counsel Charles Marshall.[58] On September 26, 2018, Beaulieu filed a motion to disqualify counsel[59] in regards to Assistant United States Attorney Michael McMahon ("AUSA McMahon") and a motion to compel the Government to produce *Brady* evidence.[60] The United States opposed both motions.[61]

Moreover, on September 26, 2018, Beaulieu's counsel also sent an email to the Court stating that he "believes recusal is appropriate in this case under 28 U.S.C. § 455(a)" and offered to provide the Court with a letter setting forth his position.[62] The Court set a telephone conference for September 27, 2018 to inquire whether the request for recusal was based on extrajudicial information the Court might have inadvertently been privy to.[63] Hearing none, the Court told Beaulieu's counsel that, if he believed recusal is appropriate, he should file a motion so the issue could be fully addressed.[64] On October 1, 2018, Beaulieu filed the instant Motion to Recuse Pursuant to 28 U.S.C. § 455(a).[65] The Government filed an opposition to the instant motion on October 10, 2018.[66] On October 15, 2018, with leave of Court, Beaulieu filed a reply brief in further support of the motion.[67]

---

[58] Rec. Doc. 11.

[59] Rec. Doc. 22.

[60] Rec. Doc. 23.

[61] Rec. Docs. 29, 30.

[62] Rec. Doc. 28 at 1; *see* attached correspondence.

[63] *Id.*

[64] *Id.*

[65] Rec. Doc. 25.

[66] Rec. Doc. 32.

[67] Rec. Doc. 42.

## II. Parties' Arguments

### A.    *Beaulieu's Arguments in Support of the Motion to Recuse*

In the motion, Beaulieu argues that the Court should recuse itself pursuant to 28 U.S.C. § 455(a) because: (1) the Court has prejudged Beaulieu's refusal to testify as "obstruction of justice," (2) the Court has prejudged the credibility of defense witness Cimino, (3) AUSA McMahon "impermissibly steered the Court," (4) judicial economy favors recusal, and (5) Beaulieu was justified in his refusal to testify.[68]

#### 1.    *Argument that the Court has prejudged Beaulieu's refusal to testify as obstruction of justice*

Beaulieu alleges that the Court's comments from the May 15, 2018 hearing regarding the severity of the contempt charge show that the Court prejudged Beaulieu's conduct as obstruction of justice.[69]  In support, Beaulieu points to several of the Court's comments, including that "'[m]y concern is that Mr. Beaulieu thinks this is a light matter, that Mr. Beaulieu is mocking the Court, that he thinks he can come in here and manipulate the Court.'"[70]  Beaulieu also points to the Court's comment that:

> [i]t's never a light matter to absolutely refuse to testify upon an order of the court, but the individual is involved in the matter. I have to take all of those into account and, most importantly, the rule of law and respect for the rule of law, and that's what I have not seen here in any way, shape, or form.[71]

Additionally, Beaulieu highlights the Court's comment that:

---

[68] Rec. Doc. 25-1.

[69] *Id.* at 3–5.

[70] *Id.* at 3 (citing Rec. Doc. 4 at 7).

[71] *Id.* at 4 (citing Rec. Doc. 4 at 8).

You know, it's not like I didn't preside over the trial. It's not like we didn't go to every extent to make sure that Mr. Beaulieu's Fifth Amendment right was protected.

…

I still fail to see, you know, if he had all the protections under the, you know, self-discrimination [sic], except that he couldn't sit on the stand and lie, and he couldn't obstruct justice, you really leave me with no choice.[72]

Finally, Beaulieu points to the Court's comment that:

I haven't forgotten what the testimony of the U.S. Marshal was when he took the stand, of Mr. Beaulieu's attitude. I haven't forgotten that. I'm not – there is nothing else to weigh against that, but I'm considering the person that has – is appearing before me now and the information that I have. It's not a light matter.[73]

Beaulieu argues that these statements amount to "strong conclusions" on the issue of whether Beaulieu's refusal to testify was justified and thus a new judge must be appointed to decide this issue.[74] Further, Beaulieu argues that the Court's alleged prejudgment of the "obstruction of justice" issue negatively prejudices Beaulieu in sentencing because more severe sentencing guidelines apply to "obstruction of justice" as compared to other potential charges.[75]

### 2. *Argument that the Court has prejudged the credibility of defense witness Cynthia Cimino*

Beaulieu alleges that the Court's comments made in a September 27, 2018 status conference conducted by telephone demonstrate that the Court has prejudged the credibility of defense witness Cimino, Beaulieu's prior defense counsel.[76] Beaulieu argues that Cimino is a

---

[72] *Id.* (citing Rec. Doc. 4 at 7).

[73] *Id.* at 5 (citing Rec. Doc. 4 at 7).

[74] *Id.*

[75] *Id.* at 8.

[76] *Id.*

relevant witness because she will "attest[] to the fact that she was initially given a letter granting 'full' immunity to Thaddeus Beaulieu in the underlying matter on April 25, 2018, but then the prosecutors physically confiscated the letter (after Beaulieu agreed to testify under its terms) and replaced it with a letter granting only partial immunity."[77]

Beaulieu alleges that during the conference, AUSA McMahon stated that Cimino was "unprepared at trial and that her recollection of events could not be trusted."[78] Further, Beaulieu alleges that "[t]he Court expressed agreement with AUSA McMahon's credibility comments regarding Cynthia Cimino on the conference call."[79] Beaulieu argues that the Court's alleged agreement with McMahon's comments "demand recusal of the Court in this matter since this credibility determination between Ms. Cimino and AUSA McMahon is the crux of this case and should not be prejudged before hearing sworn testimony from all witnesses, including Ms. Cimino."[80]

### 3. *Argument that Assistant United States Attorney Michael McMahon "impermissibly steered the Court"*

Beaulieu alleges that AUSA McMahon "impermissibly steered the Court to prejudge" both the obstruction of justice charge and the credibility of defense witness Cynthia Cimino.[81] Beaulieu alleges that several statements made by AUSA McMahon during both the May 15, 2018 contempt

---

[77] Id. at 8–9.

[78] *Id.* at 9 (internal citations omitted).

[79] *Id.*

[80] *Id.* at 10.

[81] *Id.* at 11–12.

hearing and the September 27, 2018 status conference placed the Court "in an untenable position where it must recuse itself in order to maintain impartiality and fairness in this proceeding."[82]

### 4. *Argument that judicial economy favors recusal*

Beaulieu argues that judicial economy favors recusal because "even if the Court believes that 455(a) has not been triggered in this case…federal district judges often recuse themselves on the grounds of judicial economy even where they believe that no appearance of bias exists."[83] Specifically, Beaulieu argues that judicial economy favors recusal because "a denial of the motion to recuse will necessarily result in the filing of a Writ of Mandamus to the Fifth Circuit."[84] Further, Beaulieu argues that the Court's decision to recuse itself in this case will not "open[] the flood gates" of recusal because this is "somewhat different from other criminal proceedings—because a judge is presiding over an alleged criminal violation of its own order."[85]

### 5. *Argument that Beaulieu was justified in his refusal to testify*

In addition to arguing that the Court should recuse itself, Beaulieu also argues that he should not be held in contempt because:

> his decision to invoke the Fifth Amendment was made in good faith, based on a reasonable fear of future prosecution because the prosecutors in the underlying matter violated his due process rights by initially granting him full immunity with no exception via a letter provided to Mr. Beaulieu on April 25, 2018 (under which terms Mr. Beaulieu agreed to testify) but then improperly withdrew that immunity and substituted it with a letter granting only partial immunity under 18 U.S.C. § 6002 (which included an exception for making false statements.[86]

---

[82] *Id.* at 12.

[83] *Id.* at 14.

[84] *Id.* at 15.

[85] *Id.* at 16–17 (internal citations omitted).

[86] *Id.* at 2.

Further, Beaulieu argues that:

> Lead counsel for the government in the underlying matter, AUSA Michael McMahon, compounded this due process violation by delivering a threat to Mr. Beaulieu, before he took the stand, that if his trial testimony differed in any way from an FBI agent's 302 interview memo, he would be prosecuted to the full extent of the law.[87]

## B.    The United States' Arguments in Opposition to the Motion to Recuse

In opposition, the United States alleges that the central issue for recusal is "whether [the Court's] impartiality might reasonably be questioned."[88] The United States argues that "the Court did nothing untoward, nothing unusual, and nothing that would reveal a mind already made up."[89] Instead, the United States argues that in previous interactions between the parties, specifically in the May 15, 2018 contempt hearing, the Court "merely set forth reasons for setting the matter for a jury trial—applicable only when a defendant's potential sentence exceeds six months."[90] The United States argues that the Court's comments were made "not in prejudgment of the merits of the case, any defenses that Beaulieu might have, or the sentence that he would receive, but in acknowledging the potential for a higher sentence such that a jury trial would be required."[91]

The United States specifically points to language from United States Supreme Court stating that "critical," "disapproving," or "hostile" comments towards one side "do not ordinarily support a bias or impartiality challenge" unless they come from an "extrajudicial source" or "reveal such

---

[87] *Id.*

[88] Rec. Doc. 32 at 1 (citing 28 U.S.C. § 455(a)).

[89] *Id.*

[90] *Id.*

[91] *Id.* at 1–2.

a high degree of favoritism or antagonism as to make fair judgment impossible."[92] Further, the United States points to language from the Fifth Circuit that a court having made comments about a defendant "likely [being] in criminal contempt" and having "violated" court orders did not require disqualification from a contempt proceeding.[93] To highlight the impartiality of the Court in the instant case, the United States points to language from the Court that "acknowledged that *if* Beaulieu had all the protections against self-incrimination, then the Court would be left with 'no choice' but to sentence him accordingly."[94] The United States also highlights that the Court has not yet heard Beaulieu's evidence, and has "acknowledged that it [has] to 'fully hear th[e] matter' (referring to the trial on the contempt charge) before determining an appropriate sentence."[95]

Further, the United States argues that AUSA McMahon's advocacy was not an "out-of-turn soliloquy aimed at poising the defendant's chance at a fair trial," but rather was "aimed at encouraging the Court to remove itself as factfinder and assign an impartial jury to determine the defendant's guilt so that, upon conviction, the Court would be permitted to impose a sentence in excess of six months."[96]

## C. Beaulieu's Arguments in Further Support of the Motion to Recuse

In reply, Beaulieu asserts that the opposition filed by the United States made no attempt to address the facts he raised in his motion.[97] Beaulieu contends that AUSA McMahon has filed

---

[92] *Id.* at 2 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

[93] *Id.* (citing *United States v. Allen*, 587 F.3d 246, 252-53 (5th Cir. 2009)).

[94] *Id.* at 3.

[95] *Id.*

[96] *Id.* at 1–2.

[97] Rec. Doc. 38 at 1.

pleadings into the record of this proceeding "scandalously" accusing counsel for Beaulieu of conspiring with Cimino to submit a false affidavit regarding the original immunity letter provided to Beaulieu.[98]  Beaulieu argues that "AUSA McMahon's conduct leaves the court no choice but to recuse itself."[99]  Therefore, Beaulieu argues that "[t]his case should be transferred immediately to a new judge to preside over the myriad of issues that have been raised by AUSA McMahon's unprofessional and meritless accusations of fraud against [Beaulieu's current] counsel and Ms. Cimino in this matter."[100]

### III. Legal Standard

28 U.S.C. § 455(a) holds that a "judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[101]  The Supreme Court has held that contempt rulings are a basis for removal if the Court (1) "relied upon knowledge acquired outside such proceedings," or (2) "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible."[102]  Correspondingly, the Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."[103]  Similarly,

---

[98] *Id.* at 2–3.

[99] *Id.* at 4.

[100] *Id.*

[101] *See also Matassarin v. Lynch*, 174 F.3d 549, 571 (5th Cir.1999) ("[Disqualification is appropriate where] a reasonable person, with full knowledge of all circumstances, would harbor doubts about the judge's impartiality.").

[102] *Liteky*, 510 U.S. at 555.

[103] *Id.*

"judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."[104]

The Fifth Circuit has recognized that, with respect to recusal under 28 U.S.C. § 455(a), each "case is extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances more than by comparison to situations considered in prior jurisprudence."[105] The Fifth Circuit in *United States v. Allen*, applying the Supreme Court's recusal standard, found that recusal is not necessary based solely upon a trial judge's participation in both the underlying case and criminal contempt proceeding.[106] Furthermore, the Fifth Circuit found that judicial comments that a defendant would "likely [be] in criminal contempt" and comments about a defendant having "violated" court orders did not demonstrate prejudgment that would require disqualification from a contempt proceeding.[107] To support its decision, the Fifth Circuit looked at the record as a whole and highlighted judicial comments that demonstrated the judge had an open mind in the case.[108] These comments included that the judge would not prejudge the contempt matter, that he considered the charged contempt a "potential" violation, and that the defendants might ultimately have a legitimate excuse for their violation, which the judge would decide at the proper time.[109]

---

[104] *Id.*

[105] *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995).

[106] 587 F.3d 246 (5th Cir. 2009).

[107] *Id.* at 252–53.

[108] *Id.*

[109] *Id.*

## IV. Analysis

Here, the Court has not "relied upon knowledge acquired outside such proceedings," or "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible."[110] First, Beaulieu has not made an assertion that the Court should recuse itself based on extrajudicial knowledge. The Court specifically inquired as to whether Beaulieu's request for recusal was based on extrajudicial information during the September 27, 2018 status conference and Beaulieu presented no argument or evidence regarding such a basis for recusal at that time and has made no such argument since.[111]

Second, looking at the facts and circumstances of this case in context, the Court has not displayed "deep-seated and unequivocal antagonism" that would make fair judgment impossible.[112] Starting with the trial in the underlying criminal matter, the Court has repeatedly acted to ensure Beaulieu understood his rights and that his rights were protected. A look at the background of this case makes the Court's efforts evident. On April 25, 2018, Beaulieu was called to testify as a material witness for the prosecution.[113] His testimony was not voluntary.[114] When called as a witness, Beaulieu was brought before the Court, took the stand, and immediately invoked his Fifth Amendment right against self-incrimination and requested assistance of counsel.[115] The Court immediately appointed the Federal Public Defender's Office as counsel for

---

[110] *See Liteky*, 510 U.S. at 555.

[111] Rec. Doc. 28 at 1.

[112] *See Liteky*, 510 U.S. at 555.

[113] Case No. 16-CR-175, Rec. Doc. 201.

[114] *Id.*

[115] Case No. 16-CR-175, Trial Transcript, Testimony of Thaddeus Beaulieu at p. 1 (Apr. 25, 2018).

Beaulieu.[116] The Federal Public Defender then appointed Cimino to represent Beaulieu.[117]

After providing Beaulieu an opportunity to speak privately with his attorney,[118] the Court held a conference in chambers, with all parties present.[119] During the conference, Beaulieu's attorney stated that Beaulieu refused to testify because he was fearful of potential prosecution.[120] In response, the United States stated that it had guaranteed Beaulieu informal immunity through a letter from the United States Attorney's Office.[121] However, Beaulieu indicated that he would not testify voluntarily without a court order requiring him to do so.[122] In fact, it is unclear to the Court if Beaulieu ever intended to testify despite the grant of immunity. When asked by the Court if it was his "intention not to testify" and asked if "he just does not want to testify," Beaulieu responded personally by nodding his head in agreement.[123] Further, in response, his attorney stated:

> I will say that he did not control coming here today. It certainly is not his desire to get up on -- burning desire to get up on the witness stand, because, as the government has rightfully identified, one of the defendants is his cousin and one is a -- they grew up together since they were very small boys. So to the extent that he doesn't really -- he does not want to take the witness stand against those people, that is true, Judge.[124]

---

[116] *Id.* at 6; Case No. 16-CR-175, Rec. Doc. 211.

[117] Case No. 16-CR-175, Rec. Doc. 211.

[118] Case No. 16-CR-175, Trial Transcript, Testimony of Thaddeus Beaulieu at p. 7–8 (Apr. 25, 2018).

[119] Case No. 16-CR-175, Trial Transcript, In Chambers Conference (Apr. 25, 2018).

[120] *Id.* at 3–4.

[121] *Id.* at 4; Rec. Doc. 29-1 at 1.

[122] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 4 (Apr. 25, 2018).

[123] *Id.* at 8.

[124] *Id.* 8–9.

Regardless of whether Beaulieu intended to testify, he subsequently requested that the Court issue an order granting formal immunity under 18 U.S.C. § 6002.[125] The United States stated that it could not seek a court order granting formal immunity without the consent of the United States Department Justice.[126] The Court agreed to recess the proceedings and allow the United States to seek approval from the Department of Justice, and then allow the United States to call Beaulieu as a witness again the following day.[127] The Court informed Beaulieu that after he was given formal immunity through a court order, he would no longer be able to assert his Fifth Amendment right against self-incrimination, and that he would be in violation of a court order if he refused to testify.[128] The Court further informed Beaulieu that despite the protections of formal immunity, he would still be sworn to tell the truth while testifying in court.[129] Accordingly, the Court informed Beaulieu that he could face consequences for criminal contempt, perjury, or making a false statement if he violated a court order compelling him to testify.[130]

On April 26, 2017, trial reconvened, and the United States informed the Court that it had received authorization by letter from the Department of Justice to seek court ordered formal immunity for Beaulieu.[131] The United States then called Beaulieu back to the stand to testify.[132]

---

[125] *Id.*

[126] *Id.* at 5.

[127] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 5 (Apr. 25, 2018).

[128] *Id.* at 17.

[129] *Id.* at 14–15.

[130] *Id.*

[131] Case No. 16-CR-175, Trial Transcript at p. 2 (Apr. 26, 2018).

[132] *Id.* at 3–4.

Again, Beaulieu refused to testify.[133] The Court advised Beaulieu that he could be held in contempt of Court for his refusal to testify.[134] Beaulieu stated that he had discussed the ramifications of his decision not to testify with his attorney and understood the consequences.[135] His attorney confirmed that this discussion occurred.[136] The Court ordered Beaulieu to testify pursuant to 18 U.S.C. § 6002.[137] Nevertheless, Beaulieu violated the order and refused to testify.[138]

Instead of making a determination regarding contempt at this time, the Court scheduled a May 15, 2018 hearing to allow Beaulieu to show cause why he should not be held in contempt by the Court.[139] Beaulieu's argument that the Court should recuse itself because it has prejudged the case, based on comments made at the May 15, 2018, hearing grossly distorts the context of that hearing. At the May 15, 2018 hearing, the Court informed the parties that a person held in contempt is entitled to a jury trial if the offense is treated as a felony, rather than a petty offense, and the defendant faces a potential sentence of more than six months imprisonment.[140] The Court inquired whether the United States intended to seek a term of imprisonment of more than six months if Beaulieu is convicted of contempt.[141] The United States stated that it intends to seek a sentence of

---

[133] *Id.* at 4.

[134] *Id.* at 15.

[135] *Id.* at 16.

[136] *Id.*

[137] *Id.*

[138] *Id.*

[139] Case No. 16-CR-175, Rec. Doc. 16.

[140] Rec. Doc. 4 at 3 (citing *Cheff v. Schnackenberg*, 384 U.S. 373 (1966)).

[141] *Id.*

more than six months imprisonment if Beaulieu is convicted of contempt.[142] In support of this position, the United States cited several cases, including a Fifth Circuit case, where contemnors were sentenced to a term of imprisonment of five years for refusing to testify and analogized the facts of those cases to the one presently before the Court.[143] In response, counsel for Beaulieu did not dispute the contempt charge, but responded that "in the defendant's eyes, this was – does not rise to the level of a serious offense with respect to the conduct by my client," and thus he should not be subject to a sentence of more than six months if convicted.[144] The Court stated that refusal to testify under oath is not a "light matter," and because the United States had provided grounds demonstrating that Beaulieu could be facing a sentence of more than six months if convicted, Beaulieu was entitled to a jury trial.[145]

Comments made by the Court during the May 15, 2018 hearing that Beaulieu highlights in the instant motion, were made regarding the seriousness of Beaulieu's refusal to testify.[146] These comments were directed at ascertaining whether this offense could be punished by more than six months imprisonment and were made in the interest of protecting Beaulieu's right to a jury trial.[147] The Court did not decide Beaulieu's guilt or innocence as to the contempt charge at that time or at any time since then.[148]

---

[142] *Id.*

[143] *Id.* at 4 (citing *United States v. Patrick*, 542 F.2d 381 (7th Cir. 1976); *United States v. Berardelli*, 565 F.2d 24 (2nd Cir. 1977); *United States v. Brummitt*, 665 F.2d 521 (5th Cir. 1981)).

[144] *Id.* at 4–5.

[145] *Id.* at 7–8.

[146] Rec. Doc. 4 at 7–8.

[147] *Id.*

[148] *Id.* at 8.

On May 21, 2018, the Court issued a written Order, citing facts and authority, finding that this matter might be punishable as a felony, rather than a petty offense, and directed the Clerk of Court to assign a criminal action number for this matter.[149]  The Court further ordered that a status conference be held on June 14, 2018 at 4:00 p.m. for the purpose of scheduling a trial date.[150]  During the status conference, counsel for Beaulieu argued, once again, that this matter not be set for trial by jury.[151]  In response, the Court granted leave for the parties to submit further briefing on whether Beaulieu's refusal to testify should be treated as a petty offense or felony offense.[152]  On June 28, 2018, Beaulieu filed a memorandum regarding the issue of the seriousness of the contempt.[153]  On July 12, 2018, the United States filed an opposition.[154]

On July 23, 2018, the Court issued an order again finding that the alleged contempt could be found to be a felony offense and set a jury trial.[155]  In issuing this order, the Court once again made no determination about Beaulieu's ultimate guilt or innocence, rather the Court removed itself as the trier of fact so that a jury could make that determination after hearing both parties' arguments and reviewing all evidence. If the jury returns a guilty verdict, the Court, as in all criminal matters, will then appropriately decide Beaulieu's sentence.

---

[149]  Rec. Doc. 1.

[150]  *Id.*

[151]  Rec. Doc. 2.

[152]  Rec. Doc. 3.

[153]  Rec. Doc. 5.

[154]  Rec. Doc. 6.

[155]  Rec. Doc. 7.

On August 10, 2018, the Court granted defense counsel Cimino's motion for leave to withdraw as counsel of record for Beaulieu and appointed new defense counsel Charles Marshall.[156] On September 26, 2018, Beaulieu's counsel sent an email to the Court stating that he "believes recusal is appropriate in this case under 28 U.S.C. § 455(a)" and offered to provide the Court with a letter setting forth his position.[157] The Court set a telephone conference for September 27, 2018 to inquire whether the request for recusal was based on extrajudicial information the Court might have inadvertently been privy to.[158] Hearing none, the Court told Beaulieu's counsel that, if he believed rescusal was appropriate, he should file a motion so the issue could be fully addressed.[159] On October 1, 2018, Beaulieu filed the instant Motion to Recuse Pursuant to 28 U.S.C. § 455(a).[160] Overall, as demonstrated in any complete and thorough reading of the record, the Court's efforts to ensure Beaulieu has been treated fairly and lawfully throughout this contempt proceeding have been exhaustive.

Beaulieu's argument that the Court has prejudged any relevant issue in the present case is demonstrably false. The Court has only held that Beaulieu may possibly be subject to a sentence of more than six months if convicted of contempt, which is apparent given the Court's actions to defer a decision on this matter to a jury.[161] The instant case is similar to *United States v. Allen*,

---

[156] Rec. Doc. 11.

[157] Rec. Doc. 28 at 1; *see* attached correspondence.

[158] *Id.*

[159] *Id.*

[160] Rec. Doc. 25.

[161] *Id.*

where the Fifth Circuit found recusal was not necessary because the judge only found that the defendants' actions constituted a "potential" violation, and that the defendants might ultimately have a legitimate excuse for their violation.[162] Here, the Court is also confronted with a potential contempt charge and has acted to preserve Beaulieu's right to a jury trial accordingly.[163] Beaulieu has not pointed to any evidence or case law that indicates the Court's determination regarding the severity of Beaulieu's potential contempt charge is unprecedented in cases of this type, and Beaulieu has not pointed to any evidence that the Court has already determined Beaulieu's guilt or innocence. In fact, the Court has set the matter for a jury to decide Beaulieu's guilt or innocence.[164]

Further, for Beaulieu to claim that the Court was impermissibly steered by the advocacy of AUSA McMahon is unsupportable and flies in the face of criminal procedure. AUSA McMahon, throughout this action and in the May 15, 2018 contempt hearing, has merely advocated on behalf of the United States and informed the Court of relevant evidence or case law to support the United States' position.[165] AUSA McMahon's personal statements and interactions with Beaulieu have no bearing on whether the Court should recuse itself. Any objections that Beaulieu has with AUSA McMahon's participation in this case should properly be addressed in the motion to disqualify counsel already filed with this Court and not intertwined with a request for the Court to recuse itself.[166]

---

[162] *See* 587 F.3d 246, 252–53 (5th Cir. 2009).

[163] *See* Rec. Doc. 7 at 7.

[164] *See id.*

[165] *See* Rec. Doc. 4 at 3–4.

[166] *See* Rec. Doc. 22.

Additionally, the Court is permitted, as in all cases, to communicate with the parties about the conduct of witnesses that may appear before it, including former defense counsel Cimino. Beaulieu does not point to any comments the Court made that would prevent it from being an unbiased decision-maker, including alleged statements regarding Cimino's representation, made in a status conference set for the purpose of assessing whether the Court had inadvertently received extrajudicial information.[167] Even if true, these comments do not prejudice Beaulieu because a jury will be the ultimate trier of fact and make determinations regarding the credibility of witnesses. Therefore, counsel's claim that the Court has expressed an opinion regarding Cimino's representation has no bearing on this motion.

Furthermore, Beaulieu's attempt to argue that he was justified in his refusal to testify, based on a previously unidentified letter, has no bearing on the instant motion for recusal.[168] This Court has already determined that a jury will serve as the finder of fact in this case.[169] Thus, a jury will make a determination about the guilt or innocence of Beaulieu after hearing all arguments and evidence, including those regarding Beaulieu's justification for not testifying. Regarding the instant motion, Beaulieu's arguments about his justification have no relevance on whether the Court should recuse itself.

Finally, the Court does not find that judicial economy is favored by recusal. The Court is not required to recuse itself simply because Beaulieu threatens to file an appeal or Writ of

---

[167] *See* Rec. Doc. 28.

[168] *See* Rec. Doc. 25-1 at 2.

[169] *See* Rec. Doc. 7.

Mandamus.[170] Based on the evidence and arguments presented in this case, the Court does not find recusal warranted.

## V. Conclusion

In conclusion, Beaulieu presents no evidence of extrajudicial knowledge and no evidence that the Court cannot serve as an impartial decision-maker in this case. Furthermore, the Court was not impermissibly steered in setting a jury trial after finding that Beaulieu's criminal contempt charge could be punished by more than six months imprisonment if convicted. Based on the evidence and arguments before the Court at the time, it merely acted to preserve Beaulieu's right to a jury trial, as any court would, in such a case, and by doing so does not disqualify itself.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Recuse Pursuant to 28 U.S.C. § 455(a) is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this  19th  day of October, 2018.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[170] *See* Rec. Doc. 25-1 at 15.



**Fw: 18-108 US v. Beaulieu -**
**Alex Trabolsi**  to: eFile-Brown                   09/26/2018 05:25 PM

History:          This message has been replied to.

----- Forwarded by Alex Trabolsi/LAED/05/USCOURTS on 09/26/2018 05:25 PM -----

| | |
|---|---|
| From: | "Marshall, Charles" <Marshall@chaffe.com> |
| To: | "Alex_Trabolsi@laed.uscourts.gov" <Alex_Trabolsi@laed.uscourts.gov> |
| Cc: | "michael.mcmahon@usdoj.gov" <michael.mcmahon@usdoj.gov> |
| Date: | 09/26/2018 05:15 PM |
| Subject: | RE: 18-108 US v. Beaulieu - |

Alex,

I am counsel for Thaddeus Beaulieu. I am writing to inform the Court that the defense respectfully believes that recusal is appropriate in this case under 28 USC sec. 455(a). If the Court wishes, the defense can provide a letter (copying all counsel) that sets forth the defense's position prior to engaging in motion practice on the issue. Please let me know what the Court prefers.

Thank you.

Tuck Marshall


Serving our clients for over 190 years

**Charles D. Marshall** | *Partner*
1100 Poydras Street, Suite 2300
New Orleans, LA 70163
o: 504-585-7242 | f: 504-544-6109

chaffe.com | linkedin | bio | vcard | email

**From:** Alex_Trabolsi@laed.uscourts.gov <Alex_Trabolsi@laed.uscourts.gov> **On Behalf Of** eFile-Brown@laed.uscourts.gov
**Sent:** Monday, September 10, 2018 5:43 PM
**To:** Marshall, Charles <Marshall@chaffe.com>; michael.mcmahon@usdoj.gov
**Subject:** [EXTERNAL] 18-108 US v. Beaulieu - Pretrial Conference and Case Status

This Message originated outside of Chaffe McCall 's system.

Counsel:

There is a pretrial conference scheduled for Wednesday September 19, 2018 at 3:00 PM.

Please update the Court on the status of the case.

Thank you.

Chaffe McCall L.L.P. CONFIDENTIALITY NOTICE: This e-mail transmission, including attachments, if any, is intended for use only by the addressee(s) named herein and contains confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by reply e-mail or telephone and delete the original and destroy all electronic and other copies of this message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.