**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 18-108** |
| **THADDEUS BEAULIEU** | **SECTION: "G"** |

## ORDER[1]

Before the Court is Defendant Thaddeus Beaulieu's ("Beaulieu") "Motion to Disqualify Counsel."[2] In this case, the United States alleges that Beaulieu's refusal to testify in *United States v. Dwayne Winans, Jr., et al.*, Criminal Docket No. 16-175, after being called before the Court and granted immunity, constituted criminal contempt, and that he could face a sentence of more than six months imprisonment. Considering all of the facts and circumstances leading up to Beaulieu's refusal to testify, the Court decided the case should be tried by a jury.[3] In Beaulieu's motion, he requests that the Court disqualify Assistant United States Attorney Michael McMahon ("AUSA McMahon"), as counsel for the Government, because Beaulieu alleges that AUSA McMahon is a material witness and that he is not a disinterested prosecutor.[4] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the motion.

---

[1] The Court notes that Defendant Thaddeus Beaulieu expressly waived his presence and oral argument for the instant Motion. *See* Rec. Doc. 47.

[2] Rec. Doc. 22.

[3] Rec. Doc. 1 at 1.

[4] Rec. Doc. 22-1.

# I. Background

## A. *Factual Background*

On April 23, 2018, the Court issued a writ of habeas corpus ad testificandum to the Sheriff of Orleans Parish, directing the Sheriff to surrender Beaulieu, who was in the custody of the Sheriff, to federal authorities to testify in the underlying criminal trial.[5] The underlying criminal trial of Dwayne Winans, Jr. ("Winans") and Bryson Tuesno ("Tuesno") involved felony charges for multiple armed bank robberies, car jackings, and obstruction of justice.[6]

On April 25, 2018, Beaulieu was called to testify as a material witness for the prosecution.[7] His testimony was not voluntary.[8] When called as a witness, Beaulieu was brought before the Court, took the stand, and immediately invoked his Fifth Amendment right against self-incrimination and requested assistance of counsel.[9] The Court promptly appointed the Federal Public Defender's Office as counsel for Beaulieu.[10] The Federal Public Defender then appointed Cynthia Cimino ("Cimino") to represent Beaulieu.[11] Before proceeding, the Court provided Beaulieu an opportunity to speak privately with his attorney.[12] When the proceedings resumed, the Court stated that "[AUSA McMahon] told the Court that he is going to give the witness full

---

[5] Case No. 16-CR-175, Rec. Doc. 198.

[6] Case No. 16-CR-175, Rec. Doc. 53.

[7] Case No. 16-CR-175, Rec. Doc. 201.

[8] *Id.*

[9] Case No. 16-CR-175, Trial Transcript, Testimony of Thaddeus Beaulieu at p. 1 (Apr. 25, 2018).

[10] *Id.* at 6; Case No. 16-CR-175, Rec. Doc. 211.

[11] Case No. 16-CR-175, Rec. Doc. 211.

[12] Case No. 16-CR-175, Trial Transcript, Testimony of Thaddeus Beaulieu at p. 7–8 (Apr. 25, 2018).

testimonial immunity. That usually comes in the form of a letter so if you could have your office working on that letter…."[13] To which AUSA McMahon responded, "sure."[14]

Later that day, the Court held a conference in chambers, with all parties present.[15] During the conference, Beaulieu's attorney, Cimino, stated that Beaulieu refused to testify because he was fearful of potential prosecution.[16] Cimino referred specifically to contradictions between her client's testimony and a Federal Bureau of Investigation Form 302 ("Form 302"), memorializing a January 3, 2018 interview between an agent and Beaulieu.[17] Cimino stated, "what I think that he could potentially face would be charges of lying to a federal agent or perjury. I don't know that obstruction of justice would necessarily lie, but I can't rule out that, or whatever the government may choose to do, as a result of what I know my client would say versus what is memorialized in the 302."[18] Later in the conference, Cimino again reiterated that "[t]he issues I delved into with him with respect to what his testimony would be vis-à-vis what was memorialized in the 302 has really been the focus on my concerns for my client."[19] The Court then clarified, "[s]o if [Beaulieu] has this complete statutory immunity – well, let's play this out – and that is his only concern against self-incrimination, then he can certainly get on the stand. And if he explained whatever reason why – if he has changed his testimony, he's immune from any kind of prosecution right? If he has some

---

[13] *Id.* at 8.

[14] *Id.*

[15] Case No. 16-CR-175, Trial Transcript, In Chambers Conference (Apr. 25, 2018).

[16] *Id.* at 3–4.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 12.

explanation as to why he signed then and maybe has a change of heart, he would have an opportunity to do that. And [the United Stated] would have the opportunity to cross-examine him on that issue."[20]

In further response, the United States stated that it had guaranteed Beaulieu informal immunity through a letter from the United States Attorney's Office.[21] The letter stated:

> The United States agrees that no part of your testimony in this proceeding will be used directly against you in any legal proceeding. The United States may use any statements made in your testimony in a prosecution of you for making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*) or perjury (18 U.S.C. § 1621).[22]

However, Beaulieu indicated that he would not testify voluntarily without a court order requiring him to do so.[23] Therefore, Beaulieu requested that the Court issue an order granting formal immunity under 18 U.S.C. § 6002.[24] Yet at the same time, when asked by the Court if it was his "intention not to testify" and asked if "he just does not want to testify," Beaulieu responded personally by nodding his head in agreement.[25] Further, in response, his attorney stated:

---

[20] *Id.*

[21] *Id.* at 4; Rec. Doc. 29-1 at 1.

[22] Rec. Doc. 43-1 at 1.

[23] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 4 (Apr. 25, 2018).

[24] *Id.* at 4*; see United States v. Ramos*, 537 F.3d 439, 453 n. 8 (5th Cir. 2008) ("Formal grants of immunity under the immunity statutes are different in kind than informal immunity agreements. The former, as noted above, are creatures of statute and their issuance, by a court order that conforms to the statute, supersedes the Fifth Amendment privilege. In contrast, an informal immunity agreement is just that: an agreement between witness and government in which both parties receive mutual benefits. A witness who testifies under an informal immunity agreement is not threatened with contempt for his failure to testify, but instead with losing the benefit of the bargain he or she struck with the government. Witnesses with informal immunity agreements therefore do not abdicate their Fifth Amendment privilege when entering into the agreement; it is not until they testify that they give up the privilege. Indeed, informally immunized witnesses cannot later preclude the use of their testimony in a subsequent trial, save in accordance with their agreement with the government.") (internal citations omitted).

[25] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 8 (Apr. 25, 2018).

I will say that he did not control coming here today. It certainly is not his desire to get up on—burning desire to get up on the witness stand, because, as the government has rightfully identified, one of the defendants is his cousin and one is a—they grew up together since they were very small boys. So to the extent that he doesn't really—he does not want to take the witness stand against those people, that is true, Judge.[26]

Regardless, in response to Beaulieu's request, The United States stated that it could not seek a court order granting formal immunity without the consent of the United States Department Justice.[27] The Court agreed to recess the proceedings and allow the United States to seek approval from the Department of Justice, and then allow the United States to call Beaulieu as a witness again the following day.[28]

Before recess, AUSA McMahon further clarified that "Please note that immunity – it's not a license to lie. And the immunity doesn't cover lying. So if [Beaulieu] doesn't tell the truth, he opens himself up to a perjury or a false statement prosecution. It's not a license to lie."[29] In response, Cimino, stated "Well, I've advised him as to the language that was in the letter that we

---

[26] *Id.* 8–9.

[27] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 5 (Apr. 25, 2018). 18 U.S.C. § 6002 provides:

> Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
> (1) a court or grand jury of the United States,
> (2) an agency of the United States, or
> (3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,
> and the person presiding over the proceeding communicates to the witness an order issued under this title, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

[28] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 5 (Apr. 25, 2018).

[29] *Id.* at 13.

were presented, Judge, which did contemplate perjury or false statements to a law enforcement officer…and obstruction. So I have gone over those with him."[30] Cimino did not raise the existence of another letter granting immunity without these exceptions with the Court at that time, although now Beaulieu claims there was such a letter.

The Court further informed Beaulieu that after given formal immunity through a court order, he would no longer be able to assert his Fifth Amendment right against self-incrimination, and that he would be in violation of a court order if he refused to testify.[31] The Court further informed Beaulieu that despite the protections of formal immunity, he would still be sworn to tell the truth while testifying in court.[32] Accordingly, the Court informed Beaulieu that he could face consequences for criminal contempt, perjury, or making a false statement if he violated a court order compelling him to testify.[33]

On April 26, 2017, trial reconvened, and the United States informed the Court that it had received authorization by letter from the Department of Justice to seek court ordered formal immunity for Beaulieu.[34] The United States then called Beaulieu back to the stand to testify.[35] Again, Beaulieu refused to testify.[36] The Court advised Beaulieu again that he could be held in

---

[30] *Id.* at 14.

[31] *Id.* at 17.

[32] *Id.* at 14–15.

[33] *Id.*

[34] Case No. 16-CR-175, Trial Transcript at p. 2 (Apr. 26, 2018).

[35] *Id.* at 3–4.

[36] *Id.* at 4.

contempt of Court for his refusal to testify.[37] Beaulieu stated that he had discussed the ramifications of his decision not to testify with his attorney and understood the consequences.[38] His attorney confirmed that this discussion occurred.[39] The Court ordered Beaulieu to testify pursuant to 18 U.S.C. § 6002.[40] Nevertheless, Beaulieu violated the order and refused to testify.[41] Therefore, the Court set a hearing for May 15, 2018, for Beaulieu to appear and show cause why he should not be held in criminal contempt for his failure to testify.[42]

Because Beaulieu refused to testify, the United States asserted that Beaulieu was an unavailable witness pursuant to Federal Rule of Evidence 804.[43] Further, the United States sought to admit the aforementioned Form 302, memorializing a January 3, 2018 interview between an agent and Beaulieu.[44] The United States argued that the Form 302 could be admitted without Beaulieu's testimony pursuant to Federal Rule of Evidence 804(b)(6) because Winans, a defendant in the underlying criminal case, had wrongfully caused Beaulieu's unavailability.[45] Specifically, the United States argued that several days earlier, Winans threatened Beaulieu in the presence of

---

[37] *Id.* at 15.

[38] *Id.* at 16.

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.* at 16–17; Rec. Doc. 216.

[43] Case No. 16-CR-175, Trial Transcript at p. 5–15 (Apr. 26, 2018).

[44] *Id.*

[45] *Id.* Federal Rule of Evidence 804(b)(6) provides an exception to the rule against hearsay where "[a] statement [is] offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6).

a Deputy United States Marshal, Maurice Lightfoot ("Lightfoot").[46] The United States called Lightfoot to the stand to testify regarding the interaction between Winans and Beaulieu.[47] Lightfoot testified that on Monday, April 22, 2018, Winans and Beaulieu were both detained in the cell block of the courthouse.[48] According to Lightfoot, when Winans saw Beaulieu, Winans said: "[Beaulieu] why you out here ratting and lying on people?"[49] Lightfoot further testified that Beaulieu responded that "[He] just mad because [I] beat two murder charges."[50] Lightfoot testified that after this interaction, he separated the prisoners.[51] Based on this testimony, the Court concluded that the United States had not shown by a preponderance of the evidence that Winans wrongfully caused—or acquiesced in wrongfully causing—Beaulieu's unavailability as a witness such that the Form 302 would be admissible under Federal Rule of Evidence 804(b)(6) and did not allow it into evidence.[52] The Form 302 stated that Beaulieu identified Defendants Winans and Tuesno in photographs related to armed bank robberies and that Winans and Tuesno attempted to recruit Beaulieu for the bank robberies.[53]

## B.    *Procedural Background*

On May 10, 2018, the Court issued an Order requiring Beaulieu to appear before this Court

---

[46] Case No. 16-CR-175, Trial Transcript at pp. 6, 19 (Apr. 26, 2018).

[47] *Id.* at 18.

[48] *Id.* at 19.

[49] *Id.* at 20.

[50] *Id.*

[51] *Id.* at 20.

[52] *Id.* at 23–24.

[53] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 3 (Apr. 25, 2018).

on May 15, 2018, to show cause why he should not be held in criminal contempt for his failure to testify.[54] The Court appointed Duane Evans, Acting United States Attorney, to prosecute the matter.[55]

At the May 15, 2018 hearing, the Court informed the parties that a person held in contempt is entitled to a jury trial if the offense is treated as a felony, rather than a petty offense, and the defendant faces a potential sentence of more than six months imprisonment.[56] The Court inquired whether the United States intended to seek a term of imprisonment of more than six months if Beaulieu is convicted of contempt.[57] The United States stated that it intends to seek a sentence of more than six months imprisonment if Beaulieu is convicted of contempt.[58] In support of this position, the United States cited several cases, including a Fifth Circuit case, where contemnors were sentenced to a term of imprisonment of five years for refusing to testify and analogized the facts of those cases to the one presently before the Court.[59] In response, counsel for Beaulieu did not dispute the contempt charge, but responded that "in the defendant's eyes, this was—does not rise to the level of a serious offense with respect to the conduct by my client," and thus he should not be subject to a sentence of more than six months if convicted.[60] The Court stated that refusal

---

[54] Case No. 16-CR-175, Rec. Doc. 216.

[55] *Id.*

[56] Rec. Doc. 4 at 3 (citing *Cheff v. Schnackenberg*, 384 U.S. 373 (1966)).

[57] *Id.*

[58] *Id.*

[59] *Id.* at 4 (citing *United States v. Patrick*, 542 F.2d 381 (7th Cir. 1976); *United States v. Berardelli*, 565 F.2d 24 (2nd Cir. 1977); *United States v. Brummitt*, 665 F.2d 521 (5th Cir. 1981)).

[60] *Id.* at 4–5.

to testify under oath is not a "light matter" and thus, because the United States had provided grounds demonstrating that Beaulieu could be facing a sentence of more than six months if convicted, Beaulieu was entitled to a jury trial.[61]

On May 21, 2018, the Court issued a written Order, citing facts and authority, finding it appropriate to treat this matter as a felony, rather than a petty offense, and directed the Clerk of Court to assign a criminal action number for this matter.[62] The Court further ordered that a status conference be held on June 14, 2018 at 4:00 p.m. for the purpose of scheduling a trial date.[63] During the status conference, counsel for Beaulieu argued once again that this matter not be set for trial by jury.[64] In response, the Court granted leave for the parties to submit further briefing on whether Beaulieu's refusal to testify should be treated as a petty offense or felony offense.[65] On June 28, 2018 Beaulieu filed a memorandum regarding the issue of the seriousness of the contempt.[66] On July 12, 2018 the United States filed an opposition.[67] On July 23, 2018 the Court issued an order again finding that the alleged contempt could be found to be a felony offense and set a jury trial.[68]

On August 10, 2018, the Court granted defense counsel Cimino's motion for leave to

---

[61] *Id.* at 7–8.

[62] Rec. Doc. 1.

[63] *Id.*

[64] Rec. Doc. 2.

[65] Rec. Doc. 3.

[66] Rec. Doc. 5.

[67] Rec. Doc. 6.

[68] Rec. Doc. 7.

withdraw as counsel of record for Beaulieu and appointed new defense counsel Charles Marshall.[69] On September 26, 2018, Beaulieu's counsel sent an email to the Court stating that he "believes recusal is appropriate in this case under 28 U.S.C. § 455(a)" and offered to provide the Court with a letter setting forth his position.[70]

The Court set a telephone conference for September 27, 2018 to inquire whether the request for recusal was based on extrajudicial information the Court might have inadvertently been privy to.[71] Hearing none, the Court told Beaulieu's counsel that, if he believed recusal is appropriate, he should file a motion so the issue could be fully addressed.[72] On October 1, 2018, Beaulieu filed a Motion to Recuse Pursuant to 28 U.S.C. § 455(a).[73] The Government filed an opposition to the instant motion on October 10, 2018.[74] On October 15, 2018, with leave of Court, Beaulieu filed a reply brief in further support of the motion.[75] On October 19, 2018, the Court denied the motion to recuse, stating "[i]n conclusion, Beaulieu presents no evidence of extrajudicial knowledge and no evidence that the Court cannot serve as an impartial decision-maker in this case. Furthermore, the Court was not impermissibly steered in setting a jury trial after finding that Beaulieu's criminal contempt charge could be punished by more than six months imprisonment if convicted. Based on the evidence and arguments before the Court at the time, it merely acted to preserve Beaulieu's

---

[69] Rec. Doc. 11.

[70] Rec. Doc. 28 at 1; *see* attached correspondence.

[71] *Id.*

[72] *Id.*

[73] Rec. Doc. 25.

[74] Rec. Doc. 32.

[75] Rec. Doc. 42.

right to a jury trial, as any court would, in such a case, and by doing so does not disqualify itself."[76]

On October 31, 2018, in response to this Court's order denying the Motion to Recuse, Beaulieu filed a "Motion and Incorporated Memorandum Requesting a Stay of Proceedings,"[77] requesting that the Court stay proceedings pending resolution of a petition contemporaneously filed with the United States Court of Appeals for the Fifth Circuit requesting a writ of mandamus seeking recusal of this Court from the above captioned case.[78] On November 9, 2018, the Fifth Circuit issued an Order denying the writ of mandamus.[79] On November 14, 2018, the Court denied Beaulieu's motion to stay as moot.[80]

On September 26, 2018, Beaulieu also filed the instant motion to disqualify counsel[81] regarding AUSA McMahon and a motion to compel the Government to produce *Brady* evidence regarding an alleged third "full immunity" letter that granted Beaulieu immunity from prosecution for perjury in Court.[82] The United States opposed both motions.[83] The motion to compel was referred to United States Magistrate Judge Janis van Meerveld who found that "the veracity of the government's claim that the [full immunity] letter does not exist is an issue better reserved for

---

[76] Rec. Doc. 48 at 27.

[77] Rec. Doc. 52.

[78] *Id.* at 1 (referencing Petition for Writ of Mandamus, *In re Thaddeus Beaulieu*, No. 18-31167 (5th Cir. Oct. 31, 2018)).

[79] Order Denying Petition for Writ of Mandamus, *In re Thaddeus Beaulieu*, No. 18-31167 (5th Cir. Nov. 9, 2018)).

[80] Rec. Doc. 58.

[81] Rec. Doc. 22.

[82] Rec. Doc. 23.

[83] Rec. Docs. 29, 30.

trial."[84] The Magistrate Judge granted the motion in part and denied the motion in part, ordering AUSA McMahon to search for the letter in dispute and either produce the letter or certify, under penalty of perjury, that he has searched for and produced all letters offering Beaulieu immunity.[85] On October 31, 2018, AUSA McMahon certified to the Court, under penalty of perjury, that there were only two immunities letters, which did not include the letter in dispute by Beaulieu.[86]

The motion to disqualify counsel is presently before the Court.

## II. Parties' Arguments

### A.   *Beaulieu's Arguments in Support of the Motion to Disqualify*

In the motion, Beaulieu argues that the Court should disqualify AUSA McMahon because: (1) AUSA McMahon "participated in key events central to theory of the defense" and is thus a material witness, and (2) he is not a "disinterested prosecutor."[87]

#### 1.   *Argument that AUSA McMahon is a material witness*

Beaulieu states that "he intends to present a defense that his decision not to testify was justified because prosecutors in the underlying matter…(including lead counsel AUSA Michael McMahon) violated his due process rights by initially granting him full immunity with no exceptions (under which [Beaulieu] agreed to testify) but then improperly withdrew that immunity and substituted it with partial immunity under 18 USC 6002."[88] Beaulieu also alleges that "lead

---

[84] Rec. Doc. 50 at 1.

[85] *Id.* at 8.

[86] Rec. Doc. 51.

[87] Rec. Doc. 22-1.

[88] *Id.* at 1.

counsel for the government, AUSA McMahon, compounded this due process violation by delivering a threat to Mr. Beaulieu, before he took the stand, that if his trial testimony differed in any way from an FBI agent's 302 memorandum, he would be prosecuted to the full extent of the law."[89]

Beaulieu alleges that the factual basis for his defense is supported by the affidavit of his former defense counsel, Cimino.[90] In the attached affidavit, Cimino alleges that the "United States Attorney Office for the Eastern District of Louisiana provided [Beaulieu] with a letter which granted him complete immunity to testify at trial without any exceptions."[91] Cimino then alleges that "[p]rior to being afforded the ability to testify under complete immunity on April 25, the government took back the original complete immunity letter and provided a second letter of immunity on April 25…[which] contained certain exceptions."[92] Further, Cimino alleges that "[a]fter providing the second letter of immunity, lead counsel for the government, AUSA McMahon stated that Mr. Beaulieu would be prosecuted to the full extent of the law if his trial testimony differed in any way from an FBI agent's 302 memorandum relating to a prior interview of Mr. Beaulieu." Cimino finally claims that "due to the exceptions in the second April 25 letter, Mr. Beaulieu invoked his 5th Amendment right and refused to testify."[93]

Based on these alleged events, Beaulieu argues that "AUSA McMahon [is a] material

---

[89] *Id.*

[90] *Id.* at 2.

[91] Rec. Doc. 22-2 at 1.

[92] *Id.* at 1–2.

[93] *Id.* at 2.

witness[] with first hand knowledge and actual participation in the key events that form the basis of Mr. Beaulieu's defense."[94] Beaulieu alleges that his argument is supported by the local rules for the Eastern District of Louisiana, the Louisiana Rules of Professional Conduct, and the Model Rules, which "prohibit a lawyer from acting as an advocate at a trial in which the lawyer is 'likely to be a necessary witness.'"[95] Specifically, Beaulieu refers to Rule 3.7 of the Rules of Professional Conduct, which provides:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3) disqualification of the lawyer would work substantial hardship on the client.[96]

Beaulieu alleges that AUSA McMahon is a necessary witness on disputed matters that are essential to the defense of this matter involving the initial grant of full immunity, the improper withdrawal of that immunity, and "the threat of prosecution by AUSA McMahon to [Beaulieu] if his testimony differed at all from the FBI agent's 302."[97] Beaulieu does not cite to any controlling case law on this issue.

### 2. *Argument that AUSA McMahon is not a disinterested prosecutor*

In the alternative, Beaulieu alleges that AUSA McMahon should be disqualified because

---

[94] Rec. Doc. 22-1 at 2.

[95] *Id.* at 3 (citing Local Rule 83.2.3; Louisiana Rules of Professional Conduct 3.7(a); Model Rules of Profession Conduct Rule 3.7(a)).

[96] *Id.*

[97] *Id.*

he is not a disinterested prosecutor.[98] In support, Beaulieu points to comments made by AUSA McMahon at the May 15, 2018 hearing regarding whether the Court should set this matter for a jury trial.[99] Specifically, Beaulieu points to AUSA McMahon's comment that Mr. Beaulieu's offense "was disrespectful to the Court and to the very system of justice. We can't just have that. The order of contempt, it invalidates the Court's authority."[100] Beaulieu also points to AUSA McMahon's statements that "an appropriate sentence would be that of the maximum for obstruction of justice," and "this is no light matter and we recommend a 5-year sentence for Mr. Beaulieu."[101] Additionally, Beaulieu alleges that AUSA McMahon "improperly tried to get the Court to proceed directly to sentencing on this contempt matter" based on his comment that "[t]he Court in this context, the Court may consider what occurred in its presence without the need for further testimony."[102]

Further, Beaulieu points to AUSA McMahon's statements at the September 19, 2018 bond hearing on this matter that Beaulieu was a "danger to the community."[103] Beaulieu alleges that these statements collectively show AUSA McMahon's "overzealousness" and demonstrate he cannot serve as a "disinterested" prosecutor in this matter.[104]

**B.      *The United States' Arguments in Opposition to the Motion to Disqualify***

---

[98] *Id.* at 5.

[99] *Id.* at 6.

[100] *Id.* (citing Rec. Doc. 4 at 4).

[101] *Id.* (citing Rec. Doc. 4 at 4).

[102] *Id.* at 8 (citing Rec. Doc. 4 at 8).

[103] *Id.* at 7 (citing Rec. Doc. 19).

[104] *Id.* at 7–8.

In opposition, the United States alleges that both of Beaulieu's arguments are "equally meritless, both factually and legally."[105]

### 1. Argument that AUSA McMahon is not a material witness

The United States argues that AUSA McMahon is not a material witness to any "total immunity" letter because the United States alleges that this letter does not exist.[106] To support this claim, the Government references its arguments in opposition to Beaulieu's *Brady* motion, in which the United States asserted there were only two immunity letters, neither of which was ever withdrawn: the April 25, 2018 "queen for a day" letter and the April 26, 2018 statutory immunity letter.[107]

Additionally, the United States argues that AUSA McMahon is not a material witness to any immunity transaction because tasks related to immunity were delegated to other prosecutors, in concert with then-Criminal chief Patrice Harris Sullivan, thus AUSA McMahon would not have witnessed any alleged immunity letter transaction.[108]

### 2. Argument that AUSA McMahon is a disinterested prosecutor

The United States argues that AUSA McMahon can serve as a disinterested prosecutor because he has not threatened Beaulieu and his statements, taken in context, do not merit disqualification.[109] First, the United States argues that AUSA McMahon has never threatened

---

[105] Rec. Doc. 30 at 1.

[106] *Id.*

[107] *Id.* at 1–2.

[108] *Id.* at 2.

[109] *Id.* at 2–3.

Beaulieu as he has never spoken directly to Beaulieu before.[110] Instead, the United States asserts that AUSA McMahon's statement, taken in context, were intended to apprise Beaulieu's counsel, Cimino, that "her client would be subject to prosecution for perjury or false statement if he lied on the stand."[111] Further, the United States asserts that AUSA McMahon moved to detain Beaulieu based on a history of violence on the record.[112] The United States ultimately argues that Beaulieu fails to present arguments or cases that compel AUSA McMahon's disqualification.[113]

C.    *Beaulieu's Arguments in Further Support of the Motion to Disqualify*

In reply, Beaulieu reasserts both his previous arguments, that AUSA McMahon is a material witness and that he is not a disinterested prosecutor.[114]

1.    *Argument that AUSA McMahon is a material witness*

Beaulieu argues that AUSA McMahon is a "material witness and key participant" to the alleged grant of "complete immunity" in an initial immunity letter that was later revoked.[115] In support of this allegation, Beaulieu points to an excerpt from the April 25, 2018 trial transcript in which the Court asked AUSA McMahon if he was "going to give him complete testimonial immunity" and then AUSA McMahon replied "[y]es, indeed."[116] Beaulieu also points to another except from that trial transcript in which the Court stated "Mr. McMahon told the Court that he is

---

[110] *Id.* at 3.

[111] *Id.*

[112] *Id.*

[113] *Id.* at 4.

[114] Rec. Doc. 40.

[115] Rec. Doc. 40 at 1.

[116] *Id.* at 2.

going to give the witness full testimonial immunity. That usually comes in the form of a letter so if you could have your office working on that letter –," to which AUSA McMahon replied "sure."[117]

Beaulieu also argues that AUSA McMahon is a key witness based on his threats made "on and off the record."[118] However, the only specific "threat" that Beaulieu points to is AUSA McMahon's statements on the record, confirming with Cimino, that her client would not be given immunity to lie in his testimony.[119]

### 2. *Argument that AUSA McMahon is not a disinterested prosecutor*

Beaulieu again argues that AUSA McMahon is not a disinterested prosecutor as evidenced by his alleged "defamatory statements" regarding a conspiracy between former defense counsel Cimino and current defense counsel in this case.[120] Beaulieu argues that AUSA McMahon's assertions of conspiracy between current counsel and Cimino are proven false because Cimino made arguments regarding an initial "complete" immunity letter in a June 28, 2018 memorandum on the record, which predates current defense counsel's involvement in the case.[121] Beaulieu argues that because AUSA McMahon raises this issue, he is not a "disinterested prosecutor."[122]

### III. Legal Standard

---

[117] *Id.* at 3.

[118] *Id.* at 5.

[119] *Id.* at 4–5.

[120] *Id.* at 6.

[121] *Id.* (citing Rec. Doc. 5 at 2).

[122] *Id.* at 7.

"Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law."[123] "[D]isqualification cases are governed by state and national ethical standards adopted by the court."[124] The Fifth Circuit considers four legal standards relevant to the resolution of a motion to disqualify: (1) the Court's Local Rules; (2) the American Bar Association's ("ABA") Model Rules of Professional Conduct (the "Model Rules"); (3) the ABA's Model Code of Professional Responsibility (the "Model Code"); and (4) the state rules of professional conduct.[125] If the applicable standards conflict, a court must then "weigh the relative merits of each of the various competing disqualification rules."[126] However, if "the relevant local and national ethical canons provide a useful guide for adjudicating motions to disqualify, they are not controlling."[127]

Courts interpret these rules the same as any other source of law.[128] In considering a disqualification motion, courts view the rules in light of the litigant's rights and the public interest, considering "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case."[129]

---

[123] *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir.1992).

[124] *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001) (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 605 (5th Cir. 1992)).

[125] *Id.*

[126] *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995).

[127] *Id.* at 1314.

[128] *In re Dresser Indus.*, 972 F.2d 540, 543 (5th Cir. 1992).

[129] *Id.* at 544.

## IV. Analysis

Here, Beaulieu argues that the Court should disqualify AUSA McMahon because: (1) AUSA McMahon "participated in key events central to theory of the defense" and is thus a material witness, and (2) he is not a "disinterested prosecutor."[130] Specifically, Beaulieu states that AUSA McMahon is a witness to an alleged "complete" immunity letter, not in the record, and that AUSA McMahon is a witness based on the alleged threats he made against Beaulieu.[131]

### A.     *AUSA McMahon as a material witness*

In the instant motion requesting disqualification, Beaulieu refers to the following ethical canons: (1) the Local Rules for the Eastern District of Louisiana ("Local Rules"); (2) the American Bar Association's Model Rules of Professional Conduct ("Model Rules"); (3) the Louisiana Rules of Professional Conduct ("Louisiana Rules"). Local Rule 83.2.3, which addresses the "Rules of Conduct" for attorneys, states that the Eastern District of Louisiana adopts the Louisiana Rules. Further, Rule 3.7 of the Louisiana Rules is identical to Rule 3.7 of the Model Rules. Both hold:

> (a) A Lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) The testimony relates to an uncontested issue;
> (2) The testimony relates to the nature and value of legal services rendered in the case; or
> (3) Disqualification of the lawyer would work substantial hardship on the client.

Therefore, the question before the Court is whether AUSA McMahon is a "necessary witness."[132] A lawyer is a "necessary witness" when they have unique testimony to present, but

---

[130] Rec. Doc. 22-1.

[131] *Id.* at 2–4; Rec. Doc. 40 at 1–5.

[132] *See* Model Rule 3.7, Louisiana Rule 3.7.

"is not likely to be a necessary witness" when evidence pertaining to each matter to which he could testify is available from another source.[133] In *Horaist*, for example, the Fifth Circuit held that a lawyer was not a necessary witness and the district court did not act in error in refusing to disqualify him because his testimony was cumulative of the potential testimony of other witnesses.[134] Likewise, in *Starnes*, the Fifth Circuit held that a lead prosecutor who participated in extrajudicial searches involved in the case, was not a necessary witness because other law enforcement agents were present during these searches.[135]

Beaulieu alleges AUSA McMahon is a necessary witness because "he intends to present a defense that his decision not to testify was justified because prosecutors in the underlying matter…(including lead counsel AUSA Michael McMahon) violated his due process rights by initially granting him full immunity with no exceptions (under which [Beaulieu] agreed to testify) but then improperly withdrew that immunity and substituted it with partial immunity under 18 USC 6002."[136] Beaulieu also alleges that "lead counsel for the government, AUSA McMahon, compounded this due process violation by delivering a threat to Mr. Beaulieu, before he took the stand, that if his trial testimony differed in any way from an FBI agent's 302 memorandum, he would be prosecuted to the full extent of the law."[137]

Beaulieu alleges that his defense is supported by the affidavit of his former defense counsel,

---

[133] *United States v. Starnes*, 157 F. App'x 687, 693–94 (5th Cir. 2005) (quoting *Horaist*, 255 F.3d at 267).

[134] *Horaist*, 255 F.3d at 267.

[135] *Starnes*, 157 F. App'x at 694.

[136] Rec. Doc. 22-1 at 1.

[137] *Id.*

Cimino.[138]  In her affidavit, Cimino alleges that the "United States Attorney [sic] Office for the Eastern District of Louisiana provided [Beaulieu] with a letter which granted him complete immunity to testify at trial without any exceptions."[139]  Cimino then alleges that "[p]rior to being afforded the ability to testify under complete immunity on April 25, the government took back the original complete immunity letter and provided a second letter of immunity on April 25…[which] contained certain exceptions."[140]  Further, Cimino alleges that "[a]fter providing the second letter of immunity, lead counsel for the government, AUSA McMahon stated that Mr. Beaulieu would be prosecuted to the full extent of the law if his trial testimony differed in any way from an FBI agent's 302 memorandum relating to a prior interview of Mr. Beaulieu."[141]  Cimino finally claims that "due to the exceptions in the second April 25 letter, Mr. Beaulieu invoked his 5th Amendment right and refused to testify."[142]  Based on these allegations, Beaulieu argues that "AUSA McMahon [is a] material witness[] with first hand knowledge and actual participation in the key events that form the basis of Mr. Beaulieu's defense."[143]

In further support of these allegations, Beaulieu points to an excerpt from the April 25, 2018 trial transcript in which the Court asked AUSA McMahon if he was "going to give him complete testimonial immunity" and then AUSA McMahon replied "[y]es, indeed."[144]  Beaulieu

---

[138] *Id.* at 2.

[139] Rec. Doc. 22-2 at 1.

[140] *Id.* at 1–2.

[141] *Id.* at 2.

[142] *Id.*

[143] Rec. Doc. 22-1 at 2.

[144] Rec. Doc. 40 at 2.

also points to another excerpt from that trial transcript in which the Court stated "Mr. McMahon told the Court that he is going to give the witness full testimonial immunity. That usually comes in the form of a letter so if you could have your office working on that letter," to which AUSA McMahon replied "sure."[145]

Beaulieu also reasserts in his reply that AUSA McMahon is a key witness based on his threats made "on and off the record."[146] However, the only specific "threat" that Beaulieu points to is AUSA McMahon's statements on the record, confirming with Cimino, that her client would not be given immunity to lie in his testimony before the Court.[147]

Despite Beaulieu's assertions, AUSA McMahon is not a necessary witness. Beaulieu does not allege that AUSA McMahon has any unique testimony to provide in this case. All testimony that would be provided by AUSA McMahon is either already on the record or relates to conduct that occurred in the presence of other individuals that could be called to testify. Specifically, Cimino's affidavit on which Beaulieu relies states that the "*United States Attorney* [sic] *Office for the Eastern District of Louisiana* provided [Beaulieu] with a letter which granted him complete immunity to testify at trial without any exceptions."[148] Cimino further states that "[p]rior to being afforded the ability to testify under complete immunity on April 25, *the government* took back the original complete immunity letter and provided a second letter of immunity on April 25…[which]

---

[145] *Id.* at 3.

[146] *Id.* at 5.

[147] *Id.* at 4–5.

[148] Rec. Doc. 22-2 at 1 (emphasis added).

contained certain exceptions."[149] Beaulieu does not argue that AUSA McMahon dealt with this letter or that he had any personal contact with Beaulieu.

Assistant United States Attorney Patrice Sullivan ("AUSA Sullivan"), has submitted an affidavit stating that she was the attorney who handled the immunity discussions at issue now, not AUSA McMahon.[150] In her sworn affidavit, AUSA Sullivan states that she was present in the courtroom during the relevant proceedings and that she "was the first government representative to offer any type of immunity to Mr. Beaulieu as other AUSAs were in the courtroom tending to the trial proceedings."[151] AUSA Sullivan stated that this letter, which she calls the "Queen for a Day" letter, dated April 25, 2018, offered informal immunity and prohibited derivative use of Beaulieu's testimony.[152] AUSA Sullivan further stated that "the first and only letter offered to Mr. Beaulieu on April 25, 2018 was the Queen for a Day [letter]."[153] AUSA Sullivan then states that, due to Beaulieu's refusal to testify and request for formal immunity, she applied to the United States Department of Justice Office of Enforcement Operations for a formal immunity letter pursuant to Title 18, United States Code Section 6002.[154] This is the second immunity letter that was presented to the Court and Beaulieu on April 26, 2018. AUSA Sullivan definitively states that "there was no withdrawn immunity offer."[155]

---

[149] *Id.* at 1–2 (emphasis added).

[150] Rec. Doc. 29-1 at 1.

[151] *Id.*

[152] *Id.*

[153] Rec. Doc. 29-1 at 2.

[154] *Id.*

[155] *Id.*

Beyond what is contained in the record and observed by others in Court, Beaulieu does not allege that AUSA McMahon had any extrajudicial contact with him at any point before, during, or after the trial. In fact, at the time Beaulieu was brought to testify, he was in state custody, so AUSA McMahon would not have had an opportunity to speak with him outside of a courtroom or jail setting.[156] AUSA McMahon states, through the United States' opposition to this motion, that he has "never spoke to Beaulieu; [he] never uttered a word to him," and Beaulieu provides no evidence or substantive argument otherwise.[157] Thus, any interaction between Beaulieu and AUSA McMahon happened on the record, under the gaze of this Court. While Beaulieu makes cursory allegations that AUSA McMahon made threats "on and off the record," Beaulieu only points to McMahon's explanation, on the record, of the consequences Beaulieu might face if he failed to testify despite this Court's order.[158] However, this quote is part of a larger conversation, facilitated by the Court, with all parties present, to ensure that Beaulieu understood his rights and the consequences of his refusal to testify.[159] AUSA McMahon's statements do not constitute a "threat." Instead, AUSA McMahon's statements are evidence of responsible prosecution, as AUSA McMahon helped ensure Beaulieu understood the consequences of his refusal to testify. Accordingly, the Court finds that AUSA McMahon is not a material witness in this case.

**B.**      ***AUSA McMahon as a disinterested prosecutor***

---

[156] *See* Case No. 16-CR-175, Rec. Doc. 198.

[157] Rec. Doc. 30 at 3.

[158] Rec. Doc. 40 at 5.

[159] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 12–17 (Apr. 25, 2018).

In the alternative, Beaulieu alleges that AUSA McMahon should be disqualified because he is not a disinterested prosecutor.[160] In support, Beaulieu points to comments made by AUSA McMahon at the May 15, 2018 hearing regarding whether the Court should set this matter for a jury trial.[161] Specifically, Beaulieu points to AUSA McMahon's comment that Beaulieu's offense "was disrespectful to the Court and to the very system of justice. We can't just have that. The order of contempt, it invalidates the Court's authority."[162] Beaulieu also points to AUSA McMahon's statements that "an appropriate sentence would be that of the maximum for obstruction of justice," and "this is no light matter and we recommend a 5-year sentence for Mr. Beaulieu."[163] Additionally, Beaulieu alleges that AUSA McMahon "improperly tried to get the Court to proceed directly to sentencing on this contempt matter" based on his comment that "[t]he Court in this context, the Court may consider what occurred in its presence without the need for further testimony."[164]

Further, Beaulieu points to AUSA McMahon's statements at the September 19, 2018 bond hearing on this matter that Beaulieu was a "danger to the community."[165] Beaulieu alleges that these statements collectively show AUSA McMahon's "overzealousness" and demonstrate he cannot serve as a "disinterested" prosecutor in this matter.[166]

---

[160] Rec. Doc. 22-1 at 5.

[161] *Id.* at 6.

[162] *Id.* (citing Rec. Doc. 4 at 4).

[163] *Id.* (citing Rec. Doc. 4 at 4).

[164] *Id.* at 8 (citing Rec. Doc. 4 at 8).

[165] *Id.* at 7 (citing Rec. Doc. 19).

[166] *Id.* at 7–8.

Beaulieu also argues that AUSA McMahon is not a disinterested prosecutor as evidenced by his alleged "defamatory statements" regarding an alleged conspiracy between former defense counsel Cimino and current defense counsel in this case.[167] AUSA McMahon alleges in the United States' opposition to the previously decided *Brady* motion that there was no "complete" immunity letter and that "the collaboration of attorneys Marshall and Cimino to foist the bogus affidavit on the Court [stating or implying otherwise] is a serious matter: they are perpetrating a fraud."[168] Beaulieu argues that AUSA McMahon's assertions of conspiratorial fraud are proven false because Cimino made arguments regarding an initial "complete" immunity letter in a June 28, 2018 memorandum on the record, which predates current defense counsel's involvement in the case.[169] Beaulieu alleges that AUSA McMahon's arguments on this matter demonstrate he is not a "disinterested prosecutor."[170]

> Regarding the responsibilities of a prosecutor, the Supreme Court has declared that:
>
> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape nor innocence suffer.[171]

This distinctive role of the prosecutor is further expressed in the "Criminal Justice Standards for the Prosecution Function" from the American Bar Association, which states "[t]he prosecutor is

---

[167] Rec. Doc. 40 at 6.

[168] Rec. Doc. 29 at 5.

[169] *Id.* (citing Rec. Doc. 5 at 2).

[170] *Id.* at 7.

[171] *Berger v. United States*, 295 U.S. 78, 88 (1935).

an administrator of justice, a zealous advocate, and an officer of the court. The prosecutor's office should exercise sound discretion and independent judgment in the performance of the prosecution function."[172] This being said, the Supreme Court has recognized that "[i]n an adversary system, [prosecutors] are necessarily permitted to be zealous in their enforcement of the law."[173]

Of relevance to the instant motion, the United States Supreme Court has specifically stated that a prosecutor should be a "disinterested" advocate.[174] The Fifth Circuit has echoed this sentiment, stating "there must actually be an independent prosecutor of some kind, because the district court is not constitutionally competent to fulfill that role on its own" in the context of a criminal contempt case.[175] A disinterested prosecutor is one that does not have any personal interest in the case, thus, federal prosecutors are prohibited from representing the Government in any matter in which they, their family, or their business associates have any interest.[176] Furthermore, ABA Model Rule of Professional Conduct 3.8, contains numerous provisions dealing with conflicts of interest that would conflict with a prosecutor's duty to proceed as a disinterested advocate.

For example, in *Young v. United States ex rel Vuitton et Fils S.A.*, a case cited by Beaulieu here, the Supreme Court stated that an attorney would be "interested" if he or she tried to prosecute a civil case and a contempt charge arising from the violation of a court order in that civil case.[177]

---

[172] American Bar Association, Criminal Justice Standards for the Prosecution Function, Standard 3-1.2.

[173] *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980).

[174] *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 804 (1987).

[175] *Crowe v. Smith*, 151 F.3d 217, 227–28 (5th Cir. 1998).

[176] 18 U.S.C. § 208(a).

[177] *Young.*, 481 U.S. at 804.

In that case, the Supreme Court stated that the prosecutor may be improperly motivated to pursue the criminal case to benefit his client in the underlying civil case.[178] Likewise, in *United States ex rel. S.E.C. v. Carter*, another case cited by Beaulieu, the Fifth Circuit held that the district court acted in error by appointing attorneys who prosecuted an underlying civil case to also prosecute a criminal defense charge arising from that civil case.[179] Similarly, in *Crowe v. Smith*, which Beaulieu also cites, the Fifth Circuit found an attorney was not disinterested when he was appointed to prosecute a criminal contempt charge while concurrently representing a party in the underlying civil matter.[180]

All of these cases dealt with attorneys who were interested in the outcome of a criminal contempt case because they represented parties in the underlying civil case and thus had a potential pecuniary interest in the outcome. The present matter is distinguishable. AUSA McMahon is a federal prosecutor who has no personal interest in the outcome of the underlying case. As AUSA McMahon points out in the United States' opposition to the current motion: "no such looming conflict exists with me: I have no intention to sue Beaulieu civilly nor does the prosecution for contempt promise any extraneous benefit to me."[181] Instead, AUSA McMahon's only interest "is not that [he] shall win a case, but that justice shall be done."[182] Supporting this argument, the Fifth Circuit has recognized that in similar cases, "[t]he prospect of interested decisionmaking and of

---

[178] *Id.*

[179] *United States ex rel. S.E.C. v. Carter*, 907 F.2d 484 (5th Cir. 1990).

[180] *Crowe*, 151 F.3d at 227–28.

[181] Rec. Doc. 30 at 4.

[182] *See Berger*, 295 U.S. at 88.

the appearance of impropriety is substantially lessened where the U.S. Attorney retains control of the prosecution in which the agency attorneys participate."[183]

AUSA McMahon's statements that Beaulieu cites do not demonstrate any personal bias in this case either. AUSA McMahon's comments from the May 15, 2018 hearing were made to inform the Court and Beaulieu that the Government intended to try Beaulieu's offense as a serious crime, punishable by a sentence of more than six months imprisonment.[184] In support of the United States' position, AUSA McMahon cited several cases, including a Fifth Circuit case, where contemnors were sentenced to a term of imprisonment of five years for refusing to testify and analogized the facts of those cases to the one presently before the Court.[185] AUSA McMahon did not make any improper arguments at this hearing or in any subsequent appearances before this Court.

Beaulieu's additional allegations are also unsupported by the record. Specifically there is no support for arguments that (1) AUSA McMahon "improperly" tried to direct the Court to proceed to sentencing, (2) AUSA McMahon was overzealous in advocating that Beaulieu was a "danger to the community" at his bond hearing, and (3) AUSA McMahon is not disinterested based on statements regarding a false affidavit in relation to former and current defense counsel in this case. AUSA McMahon has acted within his rights and obligations as a "zealous advocate" on behalf of the United States in this case.[186] His arguments have been supported by relevant case

---

[183] *Carter*, 907 F.2d at 487 (quoting *FTC v. American National Cellular*, 868 F.2d 315, 320 (9th Cir.1989)).

[184] Rec. Doc. 4.

[185] *Id.* at 4 (citing *United States v. Patrick*, 542 F.2d 381 (7th Cir. 1976); *United States v. Berardelli*, 565 F.2d 24 (2nd Cir. 1977); *United States v. Brummitt*, 665 F.2d 521 (5th Cir. 1981)).

[186] *Marshall*, 446 U.S. at 248.

law and the record before this Court. There is no indication that he cannot continue to serve as a "disinterested" prosecutor based on his behavior at this time.

### V. Conclusion

In conclusion, Beaulieu presents no evidence that AUSA McMahon is a necessary material witness or that he cannot serve as a disinterested prosecutor in the present case.[187] AUSA McMahon has served the United States as a zealous advocate and has responsibly proceeded before this Court, grounding his arguments in law and fact. Accordingly,

**IT IS HEREBY ORDERED** that the "Motion to Disqualify Counsel"[188] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this ___5th___ day of December, 2018.

_Nannette Jolivette Brown_
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[187] Beaulieu also makes a cursory claim, contained in two sentences, that all prosecutors involved in this case should be disqualified as witnesses to the underlying matter. Rec. Doc. 40 at 5. However, Beaulieu provides no explanation for why other prosecutors are necessary witnesses or why these prosecutors are not disinterested. Therefore, the Court is only considering the motion as it pertains to AUSA McMahon.

[188] Rec. Doc. 22.