| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 18-108** |
| **THADDEUS BEAULIEU** | **SECTION: "G"(1)** |

## <u>ORDER</u>

Pending before the Court is the United States' "Motion in Limine for Court to Take Judicial Notice that 'Total Immunity Letter' Never Existed, to Prohibit 'Good Faith' or 'Reasonable Belief' Defense, and to Quash Subpoenas."[1] In this case, the United States alleges that Defendant Thaddeus Beaulieu's ("Beaulieu") refusal to testify as a witness during a trial conducted in *United States v. Dwayne Winans, Jr., et al.*, Criminal Docket No. 16-175, after being called before the Court and granted immunity, constituted criminal contempt, and that he could face a sentence of more than six months imprisonment.[2] Considering all of the facts and circumstances leading up to Beaulieu's refusal to testify, the Court decided the case should be tried by a jury.[3]

In the instant motion, the United States argues that the Court should take judicial notice that a "total immunity letter" never existed, that the Court should prohibit Beaulieu from presenting a "good faith" defense for his refusal to testify, and that the Court should quash subpoenas Beaulieu has requested for Assistant United States Attorney McMahon ("AUSA McMahon"), Assistant

---

[1] Rec. Doc. 87.

[2] Rec. Doc. 1 at 1.

[3] Rec. Doc. 7.

United States Attorney Patrice Harris Sullivan ("AUSA Sullivan") and Special Agent Steven Rayes ("Agent Rayes").[4] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the motion.

## I. Background

### A. Factual Background

On April 23, 2018, the Court issued a writ of habeas corpus ad testificandum to the Sheriff of Orleans Parish, directing the Sheriff to surrender Beaulieu, who was in the custody of the Sheriff, to federal authorities to testify in the underlying criminal trial.[5] The underlying criminal trial of Dwayne Winans, Jr. ("Winans") and Bryson Tuesno ("Tuesno") involved felony charges for multiple armed bank robberies, car jackings, and obstruction of justice.[6]

On April 25, 2018, Beaulieu was called to testify as a material witness for the prosecution.[7] His testimony was not voluntary.[8] When called as a witness, Beaulieu was brought before the Court, took the stand, and immediately invoked his Fifth Amendment right against self-incrimination and requested assistance of counsel.[9] The Court promptly appointed the Federal Public Defender's Office as counsel for Beaulieu.[10] The Federal Public Defender then appointed

---

[4] Rec. Doc. 87-1 at 2.

[5] Case No. 16-CR-175, Rec. Doc. 198.

[6] Case No. 16-CR-175, Rec. Doc. 53.

[7] Case No. 16-CR-175, Rec. Doc. 201.

[8] *Id.*

[9] Case No. 16-CR-175, Trial Transcript, Testimony of Thaddeus Beaulieu at p. 1 (Apr. 25, 2018).

[10] *Id.* at 6; Case No. 16-CR-175, Rec. Doc. 211.

Cynthia Cimino ("Cimino") to represent Beaulieu.[11] Before proceeding, the Court provided

Beaulieu an opportunity to speak privately with his attorney.[12] When the proceedings resumed,

the Court stated that "[AUSA McMahon] told the Court that he is going to give the witness full

testimonial immunity. That usually comes in the form of a letter so if you could have your office

working on that letter…."[13] To which AUSA McMahon responded, "sure."[14]

Later that day, the Court held a conference in chambers, with all parties present.[15] During

the conference, Beaulieu's attorney, Cimino, stated that Beaulieu refused to testify because he was

fearful of potential prosecution.[16] Cimino referred specifically to contradictions between her

client's testimony and a Federal Bureau of Investigation Form 302 ("Form 302"), memorializing

a January 3, 2018 interview between an agent and Beaulieu.[17] The Form 302 stated that Beaulieu

identified Defendants Winans and Tuesno in photographs related to armed bank robberies and that

the Defendants attempted to recruit Beaulieu for the bank robberies.[18] Cimino stated, "what I think

that he could potentially face would be charges of lying to a federal agent or perjury. I don't know

that obstruction of justice would necessarily lie, but I can't rule out that, or whatever the

government may choose to do, as a result of what I know my client would say versus what is

---

[11] Case No. 16-CR-175, Rec. Doc. 211.

[12] Case No. 16-CR-175, Trial Transcript, Testimony of Thaddeus Beaulieu at p. 7–8 (Apr. 25, 2018).

[13] *Id.* at 8.

[14] *Id.*

[15] Case No. 16-CR-175, Trial Transcript, In Chambers Conference (Apr. 25, 2018).

[16] *Id.* at 3–4.

[17] *Id.*

[18] *Id.* at 3.

memorialized in the 302."[19] Later in the conference, Cimino again reiterated that "[t]he issues I delved into with him with respect to what his testimony would be vis-à-vis what was memorialized in the 302 has really been the focus on my concerns for my client."[20]  The Court then clarified:

> [s]o if [Beaulieu] has this complete statutory immunity – well, let's play this out – and that is his only concern against self-incrimination, then he can certainly get on the stand. And if he explained whatever reason why – if he has changed his testimony, he's immune from any kind of prosecution right? If he has some explanation as to why he signed then and maybe has a change of heart, he would have an opportunity to do that. And [the United Stated] would have the opportunity to cross-examine him on that issue.[21]

In further response, the United States stated that it had guaranteed Beaulieu informal immunity through a letter from the United States Attorney's Office.[22]  The letter stated:

> The United States agrees that no part of your testimony in this proceeding will be used directly against you in any legal proceeding. The United States may use any statements made in your testimony in a prosecution of you for making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*) or perjury (18 U.S.C. § 1621).[23]

However, Beaulieu indicated that he would not testify voluntarily without a court order requiring him to do so.[24]  Therefore, Beaulieu requested that the Court issue an order granting formal immunity under 18 U.S.C. § 6002.[25]  Yet at the same time, when asked by the Court if it

---

[19] *Id.* at 3–4.

[20] *Id.* at 12.

[21] *Id.*

[22] *Id.* at 4; Rec. Doc. 29-1 at 1.

[23] Rec. Doc. 43-1 at 1.

[24] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 4 (Apr. 25, 2018).

[25] *Id.* at 4*; see United States v. Ramos*, 537 F.3d 439, 453 n. 8 (5th Cir. 2008) ("Formal grants of immunity under the immunity statutes are different in kind than informal immunity agreements. The former, as noted above, are creatures of statute and their issuance, by a court order that conforms to the statute, supersedes the Fifth Amendment privilege. In contrast, an informal immunity agreement is just that: an agreement between witness and government in which both

was his "intention not to testify" and asked if "he just does not want to testify," Beaulieu responded

personally by nodding his head in agreement.[26]  Further, in response, his attorney stated:

> I will say that he did not control coming here today. It certainly is not his desire to get up on—burning desire to get up on the witness stand, because, as the government has rightfully identified, one of the defendants is his cousin and one is a—they grew up together since they were very small boys. So to the extent that he doesn't really—he does not want to take the witness stand against those people, that is true, Judge.[27]

In response to Beaulieu's request, the United States stated that it could not seek a court

order granting formal immunity without the consent of the United States Department Justice.[28]

The Court agreed to recess the proceedings and allow the United States to seek approval from the

Department of Justice, and then allow the United States to call Beaulieu as a witness again the

following day.[29]

---

parties receive mutual benefits. A witness who testifies under an informal immunity agreement is not threatened with contempt for his failure to testify, but instead with losing the benefit of the bargain he or she struck with the government. Witnesses with informal immunity agreements therefore do not abdicate their Fifth Amendment privilege when entering into the agreement; it is not until they testify that they give up the privilege. Indeed, informally immunized witnesses cannot later preclude the use of their testimony in a subsequent trial, save in accordance with their agreement with the government.") (internal citations omitted).

[26] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 8 (Apr. 25, 2018).

[27] *Id.* 8–9.

[28] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 5 (Apr. 25, 2018). 18 U.S.C. § 6002 provides:
> Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
> (1) a court or grand jury of the United States,
> (2) an agency of the United States, or
> (3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,
> and the person presiding over the proceeding communicates to the witness an order issued under this title, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

[29] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 5 (Apr. 25, 2018).

Before recess, AUSA McMahon further clarified that "Please note that immunity – it's not a license to lie. And the immunity doesn't cover lying. So if [Beaulieu] doesn't tell the truth, he opens himself up to a perjury or a false statement prosecution. It's not a license to lie."[30] In response, Cimino, stated "Well, I've advised him as to the language that was in the letter that we were presented, Judge, which did contemplate perjury or false statements to a law enforcement officer…and obstruction. So I have gone over those with him."[31] Cimino did not raise the existence of another letter granting immunity without these exceptions with the Court at that time, although now Beaulieu claims there was such a letter.

The Court informed Beaulieu that after being given formal immunity through a court order, he would no longer be able to assert his Fifth Amendment right against self-incrimination, and that he would be in violation of a court order if he refused to testify.[32] The Court further informed Beaulieu that despite the protections of formal immunity, he would still be sworn to tell the truth while testifying in court.[33] Accordingly, the Court informed Beaulieu that he could face consequences for criminal contempt, perjury, or making a false statement if he violated a court order compelling him to testify.[34]

On April 26, 2017, trial reconvened, and the United States informed the Court that it had received authorization, by letter from the Department of Justice, to seek court ordered formal

---

[30] *Id.* at 13.

[31] *Id.* at 14.

[32] *Id.* at 17.

[33] *Id.* at 14–15.

[34] *Id.*

immanity for Beaulieu.[35] The United States then called Beaulieu back to the stand to testify.[36] Again, Beaulieu refused to testify.[37] The Court advised Beaulieu again that he could be held in contempt of Court for his refusal to testify.[38] Beaulieu stated that he had discussed the ramifications of his decision not to testify with his attorney and understood the consequences.[39] His attorney confirmed that this discussion occurred.[40] The Court ordered Beaulieu to testify pursuant to 18 U.S.C. § 6002.[41] Nevertheless, Beaulieu violated the order and refused to testify.[42] Therefore, the Court set a hearing for May 15, 2018, for Beaulieu to appear and show cause why he should not be held in criminal contempt for his failure to testify.[43]

Because Beaulieu refused to testify, the United States asserted that Beaulieu was an unavailable witness pursuant to Federal Rule of Evidence 804.[44] Further, the United States sought to admit the aforementioned Form 302, memorializing a January 3, 2018 interview between an agent and Beaulieu.[45] The United States argued that the Form 302 could be admitted without

---

[35] Case No. 16-CR-175, Trial Transcript at p. 2 (Apr. 26, 2018).

[36] *Id.* at 3–4.

[37] *Id.* at 4.

[38] *Id.* at 15.

[39] *Id.* at 16.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at 16–17; Rec. Doc. 216.

[44] Case No. 16-CR-175, Trial Transcript at p. 5–15 (Apr. 26, 2018).

[45] *Id.*

Beaulieu's testimony pursuant to Federal Rule of Evidence 804(b)(6) because Winans, a defendant in the underlying criminal case, had wrongfully caused Beaulieu's unavailability.[46] Specifically, the United States argued that several days earlier, Winans had threatened Beaulieu in the presence of Deputy United States Marshal Maurice Lightfoot ("Lightfoot").[47] The United States called Lightfoot to the stand to testify regarding the interaction between Winans and Beaulieu.[48] Lightfoot testified that on Monday, April 22, 2018, Winans and Beaulieu were both detained in the cell block of the courthouse.[49] According to Lightfoot, Winans said upon seeing Beaulieu: "[Beaulieu] why you out here ratting and lying on people?"[50] Lightfoot further testified that Beaulieu responded that "[He] just mad because [I] beat two murder charges."[51] Lightfoot testified that after this interaction, he separated the prisoners.[52] Based on this testimony, the Court concluded that the United States had not shown by a preponderance of the evidence that Winans wrongfully caused—or acquiesced in wrongfully causing—Beaulieu's unavailability as a witness such that the Form 302 would be admissible under Federal Rule of Evidence 804(b)(6) and did not allow it into evidence.[53] The Form 302 stated that Beaulieu identified Defendants Winans and

---

[46] *Id.* Federal Rule of Evidence 804(b)(6) provides an exception to the rule against hearsay where "[a] statement [is] offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6).

[47] Case No. 16-CR-175, Trial Transcript at pp. 6, 19 (Apr. 26, 2018).

[48] *Id.* at 18.

[49] *Id.* at 19.

[50] *Id.* at 20.

[51] *Id.*

[52] *Id.* at 20.

[53] *Id.* at 23–24.

Tuesno in photographs related to armed bank robberies and that Winans and Tuesno attempted to recruit Beaulieu for the bank robberies.[54]

## B.      *Procedural Background*

On May 10, 2018, the Court issued an Order requiring Beaulieu to appear before this Court on May 15, 2018, to show cause why he should not be held in criminal contempt for his failure to testify.[55]  The Court appointed Duane Evans, Acting United States Attorney, to prosecute the matter.[56]

At the May 15, 2018 hearing, the Court informed the parties that a person held in contempt is entitled to a jury trial if the offense is treated as a felony, rather than a petty offense, measured by whether the defendant faces a potential sentence of more than six months imprisonment.[57]  The Court inquired whether the United States intended to seek a term of imprisonment of more than six months if Beaulieu is convicted of contempt.[58]  The United States stated that it intends to seek a sentence of more than six months imprisonment if Beaulieu is convicted of contempt.[59]  In support of this position, the United States cited several cases, including a Fifth Circuit case, where contemnors were sentenced to a term of imprisonment of five years for refusing to testify and analogized the facts of those cases to the one presently before the Court.[60]  In response, counsel

---

[54] Case No. 16-CR-175, Trial Transcript, In Chambers Conference at p. 3 (Apr. 25, 2018).

[55] Case No. 16-CR-175, Rec. Doc. 216.

[56] *Id.*

[57] Rec. Doc. 4 at 3 (citing *Cheff v. Schnackenberg*, 384 U.S. 373 (1966)).

[58] *Id.*

[59] *Id.*

[60] *Id.* at 4 (citing *United States v. Patrick*, 542 F.2d 381 (7th Cir. 1976); *United States v. Berardelli*, 565 F.2d 24 (2nd Cir. 1977); *United States v. Brummitt*, 665 F.2d 521 (5th Cir. 1981)).

for Beaulieu did not dispute the contempt charge, but responded that "in the defendant's eyes, this was—does not rise to the level of a serious offense with respect to the conduct by my client," and thus he should not be subject to a sentence of more than six months if convicted.[61] The Court stated that refusal to testify under oath is not a "light matter" and thus, because the United States had provided grounds demonstrating that Beaulieu could be facing a sentence of more than six months if convicted, Beaulieu was entitled to a jury trial.[62]

On May 21, 2018, the Court issued a written Order, citing facts and authority, finding it appropriate to treat this matter as a felony, rather than a petty offense, and directed the Clerk of Court to assign a criminal action number for this matter.[63] The Court further ordered that a status conference be held on June 14, 2018 at 4:00 p.m. for the purpose of scheduling a trial date.[64] During the status conference, counsel for Beaulieu argued once again that this matter not be set for trial by jury.[65] In response, the Court granted leave for the parties to submit further briefing on whether Beaulieu's refusal to testify should be treated as a petty offense or felony offense.[66] On June 28, 2018 Beaulieu filed a memorandum regarding the issue of the seriousness of the contempt.[67] On July 12, 2018 the United States filed an opposition.[68] On July 23, 2018 the Court

---

[61] *Id.* at 4–5.

[62] *Id.* at 7–8.

[63] Rec. Doc. 1.

[64] *Id.*

[65] Rec. Doc. 2.

[66] Rec. Doc. 3.

[67] Rec. Doc. 5.

[68] Rec. Doc. 6.

issued an order again finding that the alleged contempt could be found to be a felony offense and set a jury trial.[69]

On August 10, 2018, the Court granted defense counsel Cimino's motion for leave to withdraw as counsel of record for Beaulieu and appointed new defense counsel Charles Marshall ("Marshall").[70] On September 26, 2018, Marshall sent an email to the Court stating that he "believes recusal is appropriate in this case under 28 U.S.C. § 455(a)" and offered to provide the Court with a letter setting forth his position.[71]

The Court set a telephone conference for September 27, 2018 to inquire whether the request for recusal was based on extrajudicial information the Court might have inadvertently been privy to.[72] Hearing none, the Court told Marshall that, if he believed recusal is appropriate, he should file a motion so the issue could be fully addressed.[73] On October 1, 2018, Beaulieu filed a Motion to Recuse Pursuant to 28 U.S.C. § 455(a).[74] The Government filed an opposition to the motion on October 10, 2018.[75] On October 15, 2018, with leave of Court, Beaulieu filed a reply brief in further support of the motion.[76] On October 19, 2018, the Court denied the motion to recuse,

---

[69] Rec. Doc. 7.

[70] Rec. Doc. 11.

[71] Rec. Doc. 28 at 1.

[72] *Id.*

[73] *Id.*

[74] Rec. Doc. 25.

[75] Rec. Doc. 32.

[76] Rec. Doc. 42.

stating:

> "[i]n conclusion, Beaulieu presents no evidence of extrajudicial knowledge and no evidence that the Court cannot serve as an impartial decision-maker in this case. Furthermore, the Court was not impermissibly steered in setting a jury trial after finding that Beaulieu's criminal contempt charge could be punished by more than six months imprisonment if convicted. Based on the evidence and arguments before the Court at the time, it merely acted to preserve Beaulieu's right to a jury trial, as any court would, in such a case, and by doing so does not disqualify itself."[77]

On October 31, 2018, in response to this Court's order denying the Motion to Recuse, Beaulieu filed a "Motion and Incorporated Memorandum Requesting a Stay of Proceedings,"[78] requesting that the Court stay proceedings pending resolution of a petition contemporaneously filed with the United States Court of Appeals for the Fifth Circuit requesting a writ of mandamus seeking recusal of this Court from the above captioned case.[79] On November 9, 2018, the Fifth Circuit issued an Order denying the writ of mandamus.[80] On November 14, 2018, the Court denied Beaulieu's motion to stay as moot.[81]

On September 26, 2018 Beaulieu also filed a Motion to Compel the Government to Produce Brady Evidence, requesting that the United States produce an alleged "complete" and "full" immunity letter, that provided Beaulieu immunity to testify without fear of prosecution for perjury, false statements, or obstruction of justice.[82] On October 4, 2018, the United States filed an

---

[77] Rec. Doc. 48 at 27.

[78] Rec. Doc. 52.

[79] *Id.* at 1 (referencing Petition for Writ of Mandamus, *In re Thaddeus Beaulieu*, No. 18-31167 (5th Cir. Oct. 31, 2018)).

[80] Order Denying Petition for Writ of Mandamus, *In re Thaddeus Beaulieu*, No. 18-31167 (5th Cir. Nov. 9, 2018)).

[81] Rec. Doc. 58.

[82] Rec. Doc. 23.

opposition, asserting that no such letter ever existed.[83] On October 15, 2018, with leave of Court, Beaulieu filed a reply brief reasserting his allegations of an immunity letter not in the record.[84] On October 17, 2018, Magistrate Judge Janis Van Meerveld held a hearing on the motion.[85] On October 25, 2018, Judge Van Meerveld issued an order granting the motion in part and denying the motion in part.[86] In her order, Judge Van Meerveld declined to hold an evidentiary hearing on the matter, finding "the issue of whether there ever was a letter offering such immunity will be an issue at trial" and ordered AUSA McMahon to produce the alleged letter if it existed or certify in writing, under penalty of perjury, that he searched for and produced all letters offering any type of immunity to Beaulieu on the date in question.[87] On October 31, 2018, AUSA McMahon submitted a sworn certification stating that "there were two, and only two, immunity letters regarding Thaddeus Beaulieu: the letter dated April 25, 2018, signed by me; and the letter dated April 26, 2018, signed by Kevin Driscoll, Acting Deputy Assistant Attorney General. I further certify, for emphasis, that no other immunity letters existed."[88]

On September 26, 2018 Beaulieu also filed a Motion to Disqualify Counsel directed at AUSA McMahon.[89] In the motion, Beaulieu alleged that AUSA McMahon was a material witness to key events related to an additional immunity letter and that AUSA McMahon was not a

---

[83] Rec. Doc. 29.

[84] Rec. Doc. 42.

[85] Rec. Doc. 43.

[86] Rec. Doc. 50.

[87] *Id.* at 8.

[88] Rec. Doc. 51.

[89] Rec. Doc. 22.

disinterested prosecutor.[90] On October 4, 2018, the United States filed an opposition.[91] On October 15, 2018, with leave of Court, Beaulieu filed a reply in further support of the motion.[92] On December 5, 2018, this Court issued an order denying Beaulieu's Motion to Disqualify.[93] In the order, this Court stated that "Beaulieu presents no evidence that AUSA McMahon is a necessary material witness or that he cannot serve as a disinterested prosecutor in the present case."[94]

On October 18, 2018, Beaulieu filed a Motion to Dismiss Contempt Proceeding for Violating Due Process Rights of Thaddeus Beaulieu.[95] On November 7, 2018, the Government filed an opposition to the motion. On November 14, 2018, Beaulieu filed a Motion to Dismiss the Contempt Proceeding for Prosecutorial Misconduct.[96] On November 27, 2018, the Government filed an opposition to the motion.[97] On December 12, 2018, the Court was scheduled to hear oral argument on both motions.[98]

However, before oral argument, Beaulieu's defense counsel, Marshall, filed a "Motion to Withdraw Appointed Attorney Charles D. Marshall, III," claiming that the Government made

---

[90] *See id.*

[91] Rec. Doc. 30.

[92] Rec. Doc. 40.

[93] Rec. Doc. 65.

[94] *Id.* at 32.

[95] Rec. Doc. 44.

[96] Rec. Doc. 57.

[97] Rec. Doc. 64.

[98] Rec. Doc. 69.

threats against him in briefings filed before this Court.[99] On December 13, 2018, Beaulieu filed a motion for issuance of trial subpoenas for AUSA McMahon, AUSA Sullivan, and Agent Rayes.[100] Also on December 13, 2018, the Court granted Beaulieu's Motion to Withdraw Appointed Attorney Charles D. Marshall, III.[101]

On December 18, 2018, the Court appointed William P. Gibbens to represent Beaulieu in this matter.[102] On January 21, 2019, Beaulieu's new counsel filed a Motion to Withdraw the Motion to Dismiss for Due Process Violations and the Motion to Dismiss for Prosecutorial Misconduct.[103] On January 23, 2019, the Court granted the Motion to Withdraw.[104]

On January 24, 2019, the United States filed the instant Motion in Limine.[105] On February 1, 2019, Beaulieu filed an opposition.[106] On February 13, 2019, the United States filed a related "Memorandum on the Issue of Intent regarding Criminal Contempt."[107]

## II. Parties' Arguments

### A.    The United States' Arguments in Support of the Motion in Limine

In the instant motion, the United States argues that the Court should take judicial notice

---

[99] Rec. Doc. 68.

[100] Rec. Doc. 71.

[101] Rec. Doc. 73.

[102] Rec. Doc. 75.

[103] Rec. Doc. 84.

[104] Rec. Doc. 85.

[105] Rec. Doc. 87.

[106] Rec. Doc. 92.

[107] Rec. doc. 100.

that a "total immunity letter" never existed, that the Court should prohibit Beaulieu from presenting a "good faith" defense for his refusal to testify, and that the Court should quash subpoenas for AUSA McMahon, AUSA Sullivan and Agent Rayes.[108]

### 1. The United States argues that the Court should take judicial notice that a "total immunity letter" never existed

First, the United States argues that a "total immunity letter" never existed in this case and that the Court should take judicial notice of this alleged fact.[109] The "total immunity letter" refers to the alleged letter granting Beaulieu immunity without exception for perjury, obstruction of justice, or making a false statement, mentioned in Cimino's affidavit.[110] In the instant motion, the United States argues that Cimino's claim has been expressly refuted through denials in the affidavit of then-Criminal Chief AUSA Sullivan,[111] and the sworn statement of AUSA McMahon.[112] Further, the United States argues that this Court has recognized that all the immunity discussions took place "under the gaze of the Court," and the Court has not found evidence of the letter referenced by Cimino.[113] Ultimately, the United States argues that Cimino's assertion regarding a "total immunity letter" is unsupported by the record and her conduct before this Court because she

---

[108] Rec. Doc. 87-1 at 2.

[109] *Id.* at 1.

[110] *See* Rec. Doc. 23-2 at 1.

[111] Rec. Doc. 87-1 at 1 (citing Rec. Doc. 29-1).

[112] *Id.* (citing Rec. Doc. 51).

[113] *Id.* (citing Rec. Doc. 65 at 26).

did not raise the issue of the letter previously during the underlying trial or the associated discussions on the record.[114]

Therefore, the United States argues that any mention of the letter at trial would be "irrelevant and inadmissible" under Federal Rule of Evidence 401.[115] The United States also argues that mention of the letter should be excluded under Federal Rule of Evidence 403 because it may confuse or mislead the jury.[116] Further, the United States argues that Beaulieu should not be able to call Cimino to testify to a "total immunity letter" before the Court because it would lead to perjury.[117]

### 2. The United States argues that the Court should prohibit Beaulieu from presenting a "good faith" defense for his refusal to testify

Second, the United States argues that the Court should prohibit Beaulieu from presenting a "good faith" defense because the United States argues that no "good faith" defense exists for an immunized witness' defiance of a court order.[118]

The United States argues that "the theory behind immunity statutes contemplates, in return for surrender of the Fifth Amendment right to remain silent lest he incriminate himself, the promise that the witness will not be prosecuted based on the inculpatory evidence he gives in exchange."[119]

---

[114] *Id.* at 2.

[115] *Id.*

[116] *Id.*

[117] *Id.* at 3.

[118] *Id.*

[119] *Id.* (citing *Kastigar v. United States*, 406 U.S. 441, 461 (1972)).

However, the United States argues that immunity is "conditioned upon the witness telling the truth."[120] The United States argues that "lying can never be protected by a grant of immunity" and thus Beaulieu had to testify in this case.[121]

Therefore, the United States argues that no "good faith" defense may be presented in this case.[122] The United States argues that circuit courts have held "that a court may convict a person of contempt for 'willful' disobedience of a court order, even though the person believes in good faith that the court order is unlawful."[123] The United States argues that past contemnors have unsuccessfully raised variations of a "good faith" defense for a refusal to testify.[124] The United States argues that in this case, immunity was never truly at issue because nothing in Beaulieu's expected testimony would have implicated him in past criminal behavior.[125] Instead, the United States argues that court ordered immunity was only granted in this case to compel Beaulieu to

---

[120] *Id.* (citing *United States v. Tramunti*, 500 F.2d 1334, 1342 (2d Cir. 1974)).

[121] *Id.* at 4 (citing *United States v. Patrick*, 542 F.2d 381, 385 (7th Cir. 1976)).

[122] *Id.* at 5.

[123] *Id.* (citing *United States v. Underwood*, 880 F.2d 612, 618 (1st Cir. 1989); *see also Matter of Providence Journal Co.*, 820 F.2d 1342, 1346 (1st Cir. 1986) ("a party subject to a court order must abide by its terms or face criminal contempt," even if he thinks the order is unlawful); *United States v. Nightingale*, 703 F.2d 17, 18-19 (1st Cir. 1983) ("Defendants made a deliberate decision to refuse a court order to testify; they must now face the consequences of that decision"); *United States v. Armstrong*, 781 F.2d 700, 706 (9th Cir. 1986) (good faith reliance on counsel's advice to disobey a court order is not a defense to contempt)).

[124] *Id.* at 5–6 (citing *United States v. Remini*, 967 F.2d 754 (2d Cir. 1992) (organized crime witness claimed good faith reliance on the advice of counsel justified his criminal contempt and that his willfulness was negated by a good faith refusal to testify); *In re Gilboe*, 699 F.2d 71 (2d Cir 1983) (contemnor defied court order to testify because of fear of foreign prosecution; Second Circuit held his refusal to answer was not privileged under the Fifth Amendment, so he was properly held in contempt); *United States v. Apfelbaum*, 445 U.S. 115 (1980) (immunized witness may not refuse to testify even if doing so would subject him to adverse civil consequences)).

[125] *Id.* at 6.

testify, not to protect him from prosecution, and thus a "good faith" defense is further inapplicable.[126]

### 3. The United States argues that the Court should quash subpoenas for AUSA McMahon, AUSA Sullivan, and Agent Rayes

Finally, the United States also argues that the Court should quash subpoenas for AUSA McMahon, AUSA Sullivan, and AgentRayes. The United States argues that these witnesses will be called to testify regarding the alleged "total immunity letter" and therefore should not be subpoenaed for the reasons previously outlined in the motion.[127]

### B. Beaulieu's Arguments in Opposition to the Motion in Limine

In opposition, Beaulieu argues that the Court should not take judicial notice of a contested factual issue and that the Court should not preclude a "good faith" defense.[128] Beaulieu also withdraws his request for the issuance of subpoenas for AUSA Sullivan and Agent Rayes.[129]

### 1. Beaulieu argues that the Court should not take judicial notice of a contested factual issue

First, Beaulieu argues that whether he was presented with "one or two immunity letters" is a "hotly contested factual issue."[130] Beaulieu argues that Federal Rule of Evidence 201 provides that a court "may judicially notice a fact that is not subject to reasonable dispute" because it "is

---

[126] *Id.*

[127] *Id.* at 7.

[128] Rec. Doc. 92 at 1–5.

[129] *Id.* at 6. At a subsequent pre-trial conference, Beaulieu's attorney stated that he would also withdraw the subpoena for AUSA McMahon.

[130] *Id.* at 1.

generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[131] Beaulieu argues that courts in the Fifth Circuit have routinely held that it is not appropriate to take judicial notice of contested facts.[132] Beaulieu argues that this factual issue is contested because the parties have presented "dueling affidavits" on this issue, and that determination of the issue will require a credibility determination between the two witnesses.[133]

Additionally, Beaulieu argues that whether or not the Court takes judicial notice, this factual dispute will remain in the hands of the jury.[134] Beaulieu argues that Federal Rule of Evidence 201 also provides that, in a criminal case, "the court must instruct the jury that it may or may not accept the noticed fact as conclusive."[135] And Beaulieu argues that as the Advisory Committee noted, a "mandatory instruction to a jury in a criminal case to accept as conclusive any fact judicially noticed is inappropriate" because it is "contrary to the spirit of the Sixth Amendment right to a jury trial."[136]

---

[131] *Id.* at 1–2.

[132] *Id.* at 2 (citing *S. Louisiana Area Rate Cases v. Fed. Power Comm'n*, 428 F.2d 407, 438 (5th Cir. 1970) (stating that although the court takes "judicial notice of the concerns these speeches express . . . [w]e do not, of course, take judicial notice of the specific facts they state for the purpose of resolving contested issues); *S. Farm Bureau Life Ins. Co. v. Lusk*, 2014 WL 897812, at *8 (S.D. Tex. Mar. 6, 2014) (declining to take judicial notice of contested factual issues); *Precision Holdings, LLC v. Bourque*, 2010 WL 1142061, at *2 (W.D. La. Mar. 23, 2010) (declining to take judicial notice of "overpayment of royalties" because "to do so would run afoul of Fed. R. Evid. 201, as these are contested facts which plaintiff must prove at trial"); *Williams v. McKeithen*, 2005 WL 2037545, at *3 (E.D. La. Aug. 8, 2005) (declining to take judicial notice of "hotly contested" facts, even though some had been decided in prior lawsuits).

[133] *Id.*

[134] *Id.* at 3.

[135] Fed. R. Evid. 201(f).

[136] Fed. R. Evid. 201 Advisory Committee Notes.

### *2. Beaulieu argues that the Court should not preclude a "good faith" defense*

Second, Beaulieu argues that the Court should not preclude a "good faith" defense because the Fifth Circuit expressly allows a defendant to show that he did not commit contempt of court with "bad purpose."[137] Beaulieu argues that the Fifth Circuit has held that "the elements of criminal contempt under 18 U.S.C. § 401(3) are: '(1) a reasonably specific order; (2) violation of the order; and (3) the willful intent to violate the order.'"[138] Beaulieu argues that the Fifth Circuit defines "willfully" as meaning that "the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law."[139]

Beaulieu argues that the United States asserts that his "bad purpose" was to obstruct justice "because of his familial and personal relationships with Winans and Tuesno, and because he feared retribution for being labeled a rat."[140] Beaulieu argues that conversely, he should be allowed to present a defense that he did not act with "bad purpose" and did not intend to obstruct justice.[141]

Beaulieu argues that the cases cited by the United States' in the instant motion are inapplicable because they predate the Fifth Circuit's interpretation of the contempt statute in *Allen* and are otherwise distinguishable.

---

[137] Rec. Doc. 92 at 3.

[138] *Id.* (citing *United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009) (internal citation omitted)).

[139] *Id.* (citing Fifth Circuit Pattern Jury Instruction 1.38).

[140] *Id.* (citing Rec. Doc. 87-1 at 5).

[141] *Id.*

## C.   The United States' Further Arguments in Support of the Motion in Limine

In further support of the Motion in Limine, the United States reasserts its arguments that the Court should prohibit Beaulieu from presenting evidence of a good faith defense based on a lack of willfulness, and the United States argues that the Court should take judicial notice that a "total immunity letter" never existed.[142]

### 1. The United States reasserts that the Court should prohibit Beaulieu from presenting a "good faith" defense for his refusal to testify

In further support of the motion, the United States argues that "the contempt statute does not include as an element an intent to obstruct justice" and that the Fifth Circuit's definition for "willfulness" does not support Beaulieu's argument.[143]  The United States asserts that the criminal contempt statute provides that "[a] court of the United States shall have the power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as… [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."[144]  The United States asserts that the elements of contempt are: (1) a reasonably specific order; (2) violation of the order; and (3) willful intent to violate the order."[145]  The United States also asserts that evidence of contempt "must show both a contemptuous act and a willful, contumacious, or reckless state of mind."[146]

---

[142] *See generally* Rec. Doc. 100.

[143] *Id.* at 1.

[144] *Id.* (citing 18 U.S.C. § 401(3)).

[145] *Id.* at 1–2.

[146] *Id.* at 2 (citing *United States v. Landerman*, 109 F.3d 1053, 1068 (5th Cir. 1997); *United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009); *United States v. Dixon*, 509 U.S. 688, 702 n. 5 (1993) (noting, for double jeopardy analysis, that "[t]he 'substantive offense' of criminal contempt is willful violation of a court order") (Scalia, J.,

The United States argues that Beaulieu committed criminal contempt as "the Court gave him an express, specific, unambiguous order to testify and he violated the order willfully, meaning he did it on purpose."[147] The United States argues that willfulness does not mean with "bad purpose" in this context, as the Fifth Circuit has found the term willfulness carries a different meaning depending on the context.[148] The United States argues that when Beaulieu intentionally, defied the Court's Order, "the necessary *mens rea* was established."[149] The United States further argues that whether Beaulieu's action was animated by the "bad purpose" of "obstructing justice" is only relevant at sentencing.[150]

### 2. The United States reasserts that the Court should take judicial notice that a "total immunity letter" never existed

The United States also reasserts that the Court should exclude any mention of Cimino's "phantom letter" at trial, in which Beaulieu was allegedly granted immunity to lie in front of the Court.[151] In the alternative, the United States requests that the Court conduct a pre-trial hearing, where Ms. Cimino would testify and the Court could resolve the question of the disputed immunity letter.[152]

---

joined by Kennedy, J.).

[147] *Id.*

[148] *Id.* (citing *United States v. Arditti*, 955 F.2d 331, 340 (5th Cir. 1992)).

[149] *Id.* at 3 (citing *Nilva v. United States*, 352 U.S. 385 (1957)).

[150] *Id.*

[151] *Id.* at 6.

[152] *Id.* at 7.

# III. Legal Standard

## A. Criminal Contempt Standard

The criminal contempt statute provides that "[a] court of the United States shall have the power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as… [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."[153] The elements of contempt are: (1) a reasonably specific order; (2) violation of the order; and (3) willful intent to violate the order."[154] Evidence of contempt "must show both a contemptuous act and a willful, contumacious, or reckless state of mind."[155]

## B. Judicial Notice Standard

Federal Rule of Evidence 201 provides that a court "may judicially notice a fact that is not subject to reasonable dispute" because it "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[156] "In a criminal case, the court must instruct the jury that it may or may not accept the noticed fact as conclusive."[157] Courts in the Fifth Circuit have held that it is not appropriate to take judicial notice of contested facts.[158]

---

[153] 18 U.S.C. § 401(3).

[154] *United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009).

[155] *United States v. Landerman*, 109 F.3d 1053, 1068 (5th Cir. 1997); *United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009); *United States v. Dixon*, 509 U.S. 688, 702 n. 5 (1993) (noting, for double jeopardy analysis, that "[t]he 'substantive offense' of criminal contempt is willful violation of a court order") (Scalia, J., joined by Kennedy, J.).

[156] Federal Rule of Evidence 201(b).

[157] Federal Rule of Evidence 201(f).

[158] *S. Louisiana Area Rate Cases v. Fed. Power Comm'n*, 428 F.2d 407, 438 (5th Cir. 1970) (stating that although the court takes "judicial notice of the concerns these speeches express . . . [w]e do not, of course, take judicial notice of the specific facts they state for the purpose of resolving contested issues); *see also S. Farm Bureau Life Ins. Co. v. Lusk*, 2014 WL 897812, at *8 (S.D. Tex. Mar. 6, 2014) (declining to take judicial notice of contested factual issues);

# IV. Analysis

## A. Criminal Contempt

The United States argues that the Court should prohibit Beaulieu from presenting a "good faith" defense because the United States argues that no "good faith" defense exists for an immunized witness' defiance of a court order.[159] The United States argues that circuit courts have held "that a court may convict a person of contempt for 'willful' disobedience of a court order, even though the person believes in good faith that the court order is unlawful."[160] The United States argues that past contemnors have unsuccessfully raised variations of a "good faith" defense for a refusal to testify.[161] The United States contends that no further "bad purpose," such as a

---

*Precision Holdings, LLC v. Bourque*, 2010 WL 1142061, at *2 (W.D. La. Mar. 23, 2010) (declining to take judicial notice of "overpayment of royalties" because "to do so would run afoul of Fed. R. Evid. 201, as these are contested facts which plaintiff must prove at trial"); *Williams v. McKeithen*, 2005 WL 2037545, at *3 (E.D. La. Aug. 8, 2005) (declining to take judicial notice of "hotly contested" facts, even though some had been decided in prior lawsuits).

[159] Rec. Doc. 87-1 at 3.

[160] *Id*. (citing *United States v. Underwood*, 880 F.2d 612, 618 (1st Cir. 1989); *see also Matter of Providence Journal Co.*, 820 F.2d 1342, 1346 (1st Cir. 1986) ("a party subject to a court order must abide by its terms or face criminal contempt," even if he thinks the order is unlawful); *United States v. Nightingale*, 703 F.2d 17, 18-19 (1st Cir. 1983) ("Defendants made a deliberate decision to refuse a court order to testify; they must now face the consequences of that decision"); *United States v. Armstrong*, 781 F.2d 700, 706 (9th Cir. 1986) (good faith reliance on counsel's advice to disobey a court order is not a defense to contempt)).

[161] *Id*. at 5–6 (citing *United States v. Remini*, 967 F.2d 754 (2d Cir. 1992) (organized crime witness claimed good faith reliance on the advice of counsel justified his criminal contempt and that his willfulness was negated by a good faith refusal to testify); *In re Gilboe*, 699 F.2d 71 (2d Cir 1983) (contemnor defied court order to testify because of fear of foreign prosecution; Second Circuit held his refusal to answer was not privileged under the Fifth Amendment, so he was properly held in contempt); *United States v. Apfelbaum*, 445 U.S. 115 (1980) (immunized witness may not refuse to testify even if doing so would subject him to adverse civil consequences)).

motive to obstruct justice, is needed to prove contempt, as the necessary mental state was established when Beaulieu intentionally defied the Court's Order.[162]

Beaulieu argues that the Court should not preclude a "good faith" defense because the Fifth Circuit expressly allows a defendant to show that he did not commit contempt of court with "bad purpose."[163] Beaulieu argues that in order to prove contempt, the United States must prove that he intended to act with a "bad purpose," pointing to language from the pattern jury instructions for the Fifth Circuit, which defines the term "willfully" as follows:

> The word "willfully," as that term will be used from time to time in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.[164]

Beaulieu argues that conversely, he should be allowed to present a defense that he did not act with "bad purpose" and did not intend to obstruct justice.[165]

The criminal contempt statute provides that "[a] court of the United States shall have the power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as… [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."[166] The elements of contempt are: (1) a reasonably specific order; (2) violation of the

---

[162] Rec. Doc. 100 at 3 (citing *Nilva v. United States*, 352 U.S. 385 (1957)).

[163] Rec. Doc. 92 at 3.

[164] *Id.* (citing Fifth Circuit Pattern Jury Instruction § 1.38 (2015)).

[165] *Id.*

[166] 18 U.S.C. § 401(3).

order; and (3) willful intent to violate the order."[167] Evidence of contempt "must show both a contemptuous act and a willful, contumacious, or reckless state of mind."[168]

Beaulieu's argument that a contempt conviction requires a "bad purpose" beyond disobeying a court order is derived from the Fifth Circuit pattern instruction for "willfully" which states, in part, that one who acts willfully, acts with "bad purpose either to disobey or disregard the law."[169] However, the pattern instructions also state that "willfully…means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids."[170] Taken in context, the "bad purpose" referred to in the statute is a voluntary decision to disobey the law. Therefore, Beaulieu's interpretation of the instruction is incorrect.

However, the Court need not even rely on the aforementioned pattern instruction in this case. First, the pattern instructions acknowledge that "this definition is not accurate in every situation" and that "the term 'willfully' has 'defied any consistent interpretation by the courts.'"[171] Second, the Fifth Circuit has not relied on the pattern instructions in similar criminal contempt contexts, instead the Fifth Circuit has explained that "'willfulness' in the context of the criminal contempt statute at a minimum requires a finding of recklessness."[172] The Fifth Circuit quoted the

---

[167] *United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009).

[168] *United States v. Landerman*, 109 F.3d 1053, 1068 (5th Cir. 1997); *United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009); *United States v. Dixon*, 509 U.S. 688, 702 n. 5 (1993) (noting, for double jeopardy analysis, that "[t]he 'substantive offense' of criminal contempt is willful violation of a court order") (Scalia, J., joined by Kennedy, J.).

[169] Rec. Doc. 92 at 3 (citing Fifth Circuit Pattern Jury Instruction § 1.38 (2015)).

[170] Fifth Circuit Pattern Jury Instruction§ 1.38 (2015).

[171] *Id.* (quoting *United States v. Granda*, 565 F.2d 922, 924 (5th Cir. 1978)).

[172] *United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009).

*Black's Law Dictionary* definition of reckless, which is "a gross deviation from what a reasonable person would do."[173] Therefore, the United States need not prove that Beaulieu acted with a "bad purpose," beyond the purpose of defying the Court's Order, in this case. The United States does not need to prove that Beaulieu intended to obstruct justice as a result of his defiance, the United States must merely prove that Beaulieu's defiance was willful, which in this context means at least reckless.[174]

At this time, the Court will deny the United States' instant motion to the extent the motion seeks to preclude Beaulieu from arguing that he did not act willfully in this case. As discussed above, the elements of criminal contempt are: (1) a reasonably specific order; (2) violation of the order; and (3) willful intent to violate the order.[175] Beaulieu may argue that he did not act willfully in this case. However, Beaulieu is cautioned that the Court remains the decider of law in this case, and the Court will instruct the jury on the correct contempt standard and interpretation of the term "willfully." If Beaulieu attempts to erroneously present the law to the jury, the United States may raise further objections at trial.

## B.  *Judicial Notice*

The United States argues that a "total immunity letter" never existed in this case and that the Court should take judicial notice of this alleged fact.[176] The "total immunity letter" refers to the alleged letter from the United States Attorneys' Office granting Beaulieu immunity without

---

[173] *Id.*

[174] *See Allen*, 587 F.3d at 255.

[175] *Id.*

[176] Rec. Doc. 87-1 at 1.

exception for perjury, obstruction of justice, or making a false statement, referenced in Cimino's affidavit.[177] In the instant motion, the United States argues that Cimino's claim has been expressly refuted through denials in the affidavit of then-Criminal Chief AUSA Sullivan,[178] and the sworn statement of AUSA McMahon.[179] Further, the United States argues that this Court has recognized that all the immunity discussions took place "under the gaze of the Court," and the Court has not found evidence of the letter referenced by Cimino.[180] In opposition, Beaulieu argues that this factual issue is contested because the parties have presented "dueling affidavits" on this issue, and that determination of the issue will require a credibility determination between the two witnesses.[181]

Federal Rule of Evidence 201 provides that a court "may judicially notice a fact that is not subject to reasonable dispute" because it "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[182] However, the Fifth Circuit has stated that it is not appropriate to take judicial notice of contested facts.[183] Here, the parties dispute the existence of a "total

---

[177] *See* Rec. Doc. 23-2 at 1.

[178] Rec. Doc. 87-1 at 1 (citing Rec. Doc. 29-1).

[179] *Id.* (citing Rec. Doc. 51).

[180] *Id.* (citing Rec. Doc. 65 at 26).

[181] *Id.*

[182] Federal Rule of Evidence 201(b).

[183] *See S. Louisiana Area Rate Cases v. Fed. Power Comm'n*, 428 F.2d 407, 438 (5th Cir. 1970) (stating that although the court takes "judicial notice of the concerns these speeches express . . . [w]e do not, of course, take judicial notice of the specific facts they state for the purpose of resolving contested issues); *S. Farm Bureau Life Ins. Co. v. Lusk*, 2014 WL 897812, at *8 (S.D. Tex. Mar. 6, 2014) (declining to take judicial notice of contested factual issues); *Precision Holdings, LLC v. Bourque*, 2010 WL 1142061, at *2 (W.D. La. Mar. 23, 2010) (declining to take judicial notice of "overpayment of royalties" because "to do so would run afoul of Fed. R. Evid. 201, as these are contested facts which plaintiff must prove at trial"); *Williams v. McKeithen*, 2005 WL 2037545, at *3 (E.D. La. Aug.

immunity letter." Cimino has presented a sworn affidavit that a "total immunity letter" existed, whereas AUSA Sullivan and AUSA McMahon have presented sworn affidavits stating that such a letter did not exist.[184] Therefore, the existence of a "total immunity letter" is a contested fact that is appropriately resolved by the jury in this case. Finally, the Court finds that even if it were to take judicial notice of this contested fact, it would not serve as a conclusive determination for the jury, and thus denies the motion in this regard.[185]

Also the Court notes that to the extent that the US argues that evidence of the alleged existence of a total immunity letter should be excluded under FRE 401 as irrelevant, it has not explained how such evidence is irrelevant. Furthermore, the US has not shown that the probative value of this evidence would be substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury under FRE 403.

## C.    *Trial Subpoenas*

Beaulieu originally filed a motion for trial subpoenas for AUSA McMahon, AUSA Sullivan, and Agent Rayes.[186] However, in Beaulieu's opposition to the instant motion, Beaulieu stated that he does not intend to call Ms. Sullivan or Agent Rayes and trial and withdraws those subpoenas.[187] Beaulieu's counsel also stated at the Court's pre-trial conference that he withdraws

---

8, 2005) (declining to take judicial notice of "hotly contested" facts, even though some had been decided in prior lawsuits).

[184] *See* Rec. Doc. 92 at 2.

[185] *See* Federal Rule of Evidence 201(f).

[186] Rec. Doc. 71.

[187] Rec. Doc. 92 at 6.

the subpoena for AUSA McMahon. Therefore, the motion requesting subpoenas will be denied as moot.

## V. Conclusion

For these reasons, the Court will deny the United States' Motion in Limine. The Court will deny the United States' request to prohibit Beaulieu from pursuing a "good faith" defense because Beaulieu may argue that he did not act willfully in his defiance of the Court's Order. However, Beaulieu is cautioned that the Court is the decisionmaker regarding issues of law in this case. The Court will also deny the United States' request to take judicial notice that a "total immunity letter" never existed because this is a disputed issue of fact best resolved by a jury at trial. Furthermore, Beaulieu has agreed to withdraw the subpoenas requested in this case.

Accordingly,

**IT IS HEREBY ORDERED** that the "Motion in Limine for Court to Take Judicial Notice that 'Total Immunity Letter' Never Existed, to Prohibit 'Good Faith' or 'Reasonable Belief' Defense, and to Quash Subpoenas"[188] is **DENIED** because Beaulieu may argue that he did not "willfully" disobey the Court's Order and the existence of a "total immunity letter" remains a contested issue of fact for the jury.

**IT IS FURTHER ORDERED** that the "Motion for Issuance of Trial Subpoenas"[189] is **DENIED AS MOOT** due to Beaulieu's agreement to withdraw his request for subpoenas.

**NEW ORLEANS, LOUISIANA,** this __25th__ day of February, 2019.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[188] Rec. Doc. 87.

[189] Rec. Doc. 71.